Madden, Judge,
delivered the opinion of the court:
Plaintiffs entered into a contract with the United States on August 3, 1933, to furnish all labor and materials and perform all work required for “the construction, including approaches, etc., of the Post Office at Eochester, New York, per Bid No. 4 (using sandstone for all exterior stonework *441 except where marble and granite are required and substituting steel casement windows for the aluminum casement windows)” for a consideration of $805,923.00, in accordance with designated drawings and specifications. The work was to be completed within 540 days after receipt of the notice to proceed. Plaintiffs were notified to proceed September 2,1932, thus fixing the date of completion on or before February 24,1934.
The defendant employed a firm of architects wlm were “authorized to prepare all drawings * * * criticize and approve plaster models or ornamental work as shown or noted on contract drawings.” Article 46 of the specifications provided that the defendant would furnish the models indicated on the drawings. Plaintiffs proceeded with the work but they, and the subcontractor with whom they had made a contract for the cutting of the marble caps and the ornamental work, were delayed because of the failure of the defendant to furnish the models for the exterior marble column caps for the porticos which were at two entrances to the building. The roofs of the porticos were supported by the columns, the caps of which were between column and frieze.
The letter from the Supervising Architect, who was the duly appointed representative of the contracting officer under Article 30 of the specifications, to plaintiffs on January 26,1934, shows that there was delay in furnishing models No. 6 and No. 7, due to the fact that the contract for the models had not been awarded because of faulty designs furnished to the Supervising Architect and the necessity for new designs. Award of the contract for the models was in May instead of the early part of 1933. The models were not approved until the following June and the marble caps were not received by plaintiffs until August 17, 1933.
The defendant does not deny that by reason of its failure to furnish the models plaintiffs and their subcontractor were delayed. A change order was issued extending the time for completion of the contract for 21 days. No allowance was made in this change order for the actual loss sustained by plaintiffs and their subcontractor by reason of the fact that the delay caused plaintiffs to stop work to await the arrival of the models. The subcontractor had *442 its force ready to go to work on the carving of the column caps. It was impossible for plaintiffs to complete the roofs of the porticos because the roofs were to be supported by the columns.
The actual delay caused to the subcontractor was for thirteen days. The actual damage sustained by the subcontractor due to the cost of labor and rental of equipment, which had to be kept idle awaiting the arrival of the models, and the uncertainty as to when they- would arrive, amounted to $702.00. The subcontractor’s overhead was $35.10, and the plaintiffs’ extra overhead on account of this delay was $73.71.
Plaintiffs may have suffered other.losses on their own account, as a result of the delay, but if so, they have not adequately proved them.
We have, then, a case in which plaintiffs are suing for damages sustained by themselves as a result of the Government’s breach of contract and also for damages sustained by another person, a subcontractor. Plaintiffs may, of course, recover for their own loss, which so far as proved, was $73.71.
As to the items of $702.00 and $35.10 which represent losses of the subcontractor, we think plaintiffs may not recover. The subcontractor could not sue the Government since it has not consented to be’sued except, so far as relevant to this case, for breach of contract. But the Government had no contract with the subcontractor, hence it is not liable to, nor suable by him. Herfurth v. United States, 89 C. Cls. 122.
If the subcontractor did have a claim against the Government, it could not transfer that claim to another person, plaintiffs, for example, since assignment of such claims is forbidden by statute. R. S. 3477; 31 U. S. C. 203. The Supreme Court said of this statute, in Spofford v. Kirk, 97 U. S. 484, 488, 489:
It would seem to be impossible to use language more comprehensive than this. It embraces alike legal and equitable assignments. It includes powers of attorney, orders, or other authorities for receiving payment of any such claim, or any part thereof. It strikes at every derivative interest, in whatever form acquired, and incapacitates every claimant upon the Government from creating an interest in the claim in any other than himself.
*443 See also National Bank of Commerce v. Downie, 218 U. S. 345; Seaboard Air Line Ry. v. United States, 53 C. Cls. 107; Packard Co. v. United States, 59 C. Cls. 354.
If, then, we regard the subcontractor as the real party in interest in this claim, we are faced with a legally forbidden attempted assignment of a non-existent claim.
If we look at plaintiffs as the real party in interest in their own suit, we encounter these facts. Plaintiffs did have a contract with the Government. That contract was breached. That breach might, if the contract had been one between private persons, have given rise to a right to win a suit, and to recover nominal damages, even if no actual damages resulted from the breach. But the futile exercise of suing merely to win "a suit was not consented to by the United States when it gave its consent to be sued for its breaches of contract. Nortz v. United States, 294 U. S. 317, 327; Great Lakes Construction Co. v. United States, 95 C. Cls. 479, 502.
Plaintiffs therefore had the burden of proving, not that someone suffered actual damages from the defendant’s breach of contract, but that they, plaintiffs, suffered actual damages. If plaintiffs had proved that they, in the performance of their contract with the Government became liable to their subcontractor for the damages which the latter suffered, that liability, though not yet satisfied by payment, might well constitute actual damages to plaintiffs, and sustain their suit. Here, however, the proof shows the opposite. The subcontract, which is in evidence, shows that plaintiffs and the subcontractor agreed with each other as follows:
21st. The Contractor or Subcontractor shall not in any event be held responsible for any loss, damate (sic), detention or delay caused by the Owner or any other Subcontractor upon the building; or delays in transportation, fire, strikes, lockouts, civil or military authority, or by insurrection or riot, or by any other cause beyond the control of Contractor or Subcontractor, or in any event for consequential damages.
Thus plaintiffs, effectively so far as we are advised, protected themselves from any damage by way of liability over to the subcontractor for such breaches of contract by the Government as the one which occurred here.
*444 Plaintiffs must, then, so far as their claim includes items of losses suffered by their subcontractor, be merely accommodating another person who was damaged, by letting that other person use, for the purposes of litigation, the name of plaintiffs, who had a contract and could properly have sued if they had been damaged. Orderly administration of justice, as well as the statute against assignment of claims, seem to us to forbid that.
Plaintiffs may recover $73.71.
It is so ordered.
Whitaker, Judge; and Littleton, Judge, concur.