**CONTRACTING NORTHWEST, INC., Appellee,**

v.

**CITY OF FREDERICKSBURG, IOWA, Appellant.**

**CITY OF FREDERICKSBURG, IOWA, Appellant,**

v.

**CONTRACTING NORTHWEST, INC., American Insurance Company, Inc., and Richmond Excavating Company, Inc., Appellees.**

No. 82–2088.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1983.

Decided Aug. 2, 1983.

Simmons, Perrine, Albright & Ellwood, Robert C. Tilden, Roger W. Stone, Cedar Rapids, Iowa, for appellant.

Fabyanske & Svoboda, Gerald L. Svoboda, St. Paul, Minn., for appellee Contracting Northwest, Inc.

Ronald R. Frauenshuh, Sr., Frauenshuh & Fahlberg, Paynesville, Minn., for appellees.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

McMILLIAN, Circuit Judge.

The City of Fredericksburg, Iowa, (the City) appeals from a final order entered in the District Court[1] for the Northern District of Iowa compelling the City to arbitrate its contract dispute with appellee Contracting Northwest, Inc. (Northwest) and staying the City's litigation of the same dispute against appellees Northwest, Richmond Excavating Company, Inc. (Richmond) and American Insurance Company, Inc. (American). For reversal the City advances a number of arguments, including (1) the present dispute is nonarbitrable because Northwest failed to meet several conditions precedent to invoking arbitration under its contract with the City; (2) Northwest's disputed claims for additional compensation are nonarbitrable because in reality they are the claims of Richmond, Northwest's subcontractor, and the City has no arbitration agreement with Richmond or that covers claims of subcontractors; (3) the district court erred in staying the City's litigation against Richmond and American pending arbitration between the City and Northwest because the City has no arbitration agreement with Richmond or American; and (4) compelling the City to arbitrate against its will violates its sovereign rights under the tenth amendment to the United States Constitution. For the reasons stated below and in *Johnson Controls, Inc. v. City of Cedar Rapids*, 713 F.2d 370 (8th Cir.1983), we affirm the district court's orders.

In 1980 the City awarded Northwest a general contract to build a water treatment facility for the City. Northwest subcontracted the excavation work for the project to Richmond. The soil from the excavations was to be used to build the embankments for three of the project's waste water ponds. Problems concerning the excavation developed during the winter of 1980–81. In January, 1981, Northwest wrote to the City's Engineer stating that Northwest had excavated almost all of the soil specified in its contract with the City (254,000 cubic yards), but that there was much more soil on the site that needed to be excavated in order to complete the project. Northwest informed the Engineer that it would be willing to move an additional 40,000 cubic yards of soil at the original bid

---

1. The Honorable Edward ·J. McManus, Chief Judge, United States District Court for the Northern District of Iowa.

price of $0.766 per cubic yard, but that any further excavation beyond 40,000 cubic yards would only be done if the City paid Northwest $2.14 per cubic yard. In April, 1981, Northwest again wrote to the Engineer and requested an official "change order" for all excavation work beyond the 254,000 cubic yards originally specified in the contract. A "change order" modifies the original contract to incorporate any work performed beyond the original contract's specifications.

Northwest and the Engineer met to discuss the excavation problem, but in a letter dated April 15, 1981, the Engineer refused to grant Northwest a change order for Richmond's "additional" excavation work. The Engineer's letter also informed Northwest that the Engineer had prepared a supplemental drawing outlining remedial measures needed to correct what the Engineer felt were construction deficiencies on the part of Richmond. Northwest did not object to the denial of the change order and it did not demand arbitration of the denial at that time. Northwest contends, however, that it continued discussions with the Engineer until November of 1981 in the hopes of negotiating a change order for the excavation work. Richmond, on the other hand, immediately wrote to Northwest upon learning of the Engineer's refusal to grant a change order and demanded that Northwest invoke the arbitration provision of Northwest's contract with the City. Northwest told Richmond that it would not demand arbitration and that Richmond had to continue the excavation or face termination of the subcontract. Richmond complied with Northwest's demand by continuing the excavation, but Richmond also threatened to sue Northwest over the "extra work."

In December, 1981, Northwest and Richmond came to an agreement concerning their dispute. The City characterizes this agreement as a "secret" assignment of Richmond's claims against the City to Northwest, and a release by Richmond of its claims against Northwest. In return, the City claims that Northwest promised to prosecute Richmond's claims against the City through arbitration and to share with Richmond any possible arbitration award that Northwest might receive. Northwest and Richmond, however, assert that the agreement merely reflects the parties' understanding that Richmond will delay litigation against Northwest until after Northwest resolves Northwest's claims against the City.

In January, 1982, Northwest wrote to the Engineer claiming $2 million in costs for extra work already performed. The original contract price for the excavation work was $350,000 and the original contract price for the entire project was only about $1.5 million. The Engineer, through his attorney, responded to Northwest's claim by requesting full documentation for the claim and directing Northwest to send further correspondence to the Engineer's attorney. Northwest refused to give the additional documentation and treated the attorney's letter as a denial by the Engineer of Northwest's claim for the costs of the extra excavation work. Then, on February 10, 1982, Northwest formally demanded arbitration under its contract with the City. The City resisted arbitration and filed lawsuits against Northwest, Richmond and American for breach of contract in improperly constructing the project's embankments. Northwest and Richmond both moved to stay the City's lawsuit pending arbitration of Northwest's claims against the City under the federal Arbitration Act, 9 U.S.C. §§ 3, 4 (1976). The district court consolidated the City's lawsuits, issued an order compelling the City to arbitrate with Northwest, and granted a stay of the City's lawsuit against Northwest, Richmond, and American pending the arbitration between the City and Northwest. The City now appeals.

■ Because this cause has been brought pursuant to the Arbitration Act, our inquiry is limited to two issues: "(1) whether an express written agreement to arbitrate the subject matter of the present dispute exists between the parties, and (2) if so, whether the agreement to arbitrate

has been breached." *Johnson Controls, Inc.,* at 373. In deciding these issues, we cannot address the underlying merits of the dispute or determine whether any party has failed to meet the procedural prerequisites to arbitration. The merits of the dispute and whether the failure to meet any procedural prerequisite will bar recovery are for the arbitrator to decide. *See Automotive, Petroleum & Allied Industries Employees Union, Local 618 v. Town & Country Ford, Inc.,* 709 F.2d 509 at 511–514 (8th Cir.1983) (*Town & Country Ford, Inc.*).

The contract between the City and Northwest actually contains two separate arbitration clauses. The first clause is a "mandatory" arbitration clause. It provides that if one party demands arbitration of a particular dispute governed by the clause, then the other party must submit to arbitration. The mandatory arbitration clause is limited to disputes "about matters involving the decision of the Engineer" and requires that the demand for arbitration must be delivered to the other party within ten days of the Engineer's decision. The second clause is a "voluntary" arbitration clause. It provides that a dispute governed by the clause can be arbitrated only if *both* parties consent to the arbitration. The voluntary arbitration clause applies to any dispute between the City and the contractor arising out of the contract that is not covered by the mandatory arbitration clause. The parties agree that if all the conditions precedent to the mandatory arbitration clause are met, the mandatory arbitration clause supersedes the voluntary arbitration clause in governing this dispute. *See also Johnson Controls, Inc.,* at 376–382 (holding, under the facts similar to this case, that the mandatory arbitration clause prevails over the voluntary arbitration clause). The City, however, argues that Northwest has failed to comply with several conditions precedent to the mandatory arbi-

tration clause including (1) the failure to deliver a demand within ten days of the Engineer's decision; (2) the failure to either certify or document its claim for extra work as required by EPA regulations that were incorporated into the contract; and (3) the failure to comply with the contract's requirements for properly submitting a claim for an "equitable adjustment" of the contract price. The City also argues that the present dispute is nonarbitrable insofar as Northwest is asserting Richmond's claims against the City. The City points out that it does not have an arbitration agreement with Richmond, and the City has not agreed to arbitrate the claims of a subcontractor when arbitrating disputes of the prime contractor. The City also asserts that Northwest is barred from pressing Richmond's claims in arbitration under the *Severin* doctrine. *See Severin v. United States,* 99 Ct.Cl. 435 (1943), *cert. denied,* 322 U.S. 733, 64 S.Ct. 1045, 88 L.Ed. 1568 (1944).[2] Thus, the City argues that because Richmond has released Northwest from all liability for the extra excavation work, Northwest may not litigate or arbitrate these claims against the City. Northwest responds that each of the City's objections either go to the merits of the dispute or are "procedural" objections and, therefore, the objections are totally irrelevant to the issues before this court.

1. *Arbitrability*

We must first note our agreement with the district court that the present dispute between Northwest and the City "revolves around a 'decision of the Engineer.' " It was the Engineer who refused to issue a change order or accept Northwest's equitable adjustment claim, and it was the Engineer who issued orders to Northwest and Richmond to remedy deficiencies in the excavation and construction of the embankments. *See Contracting Northwest, Inc. v.*

---

**2.** The *Severin* doctrine is based on the federal government's limited waiver of its sovereign immunity for breach of contract and on a federal statute prohibiting assignments of contract claims against the federal government, 31 U.S.C. § 203 (1940). *See* 41 U.S.C. § 15 (1976). The doctrine holds that a prime con-

tractor may sue the federal government for damages incurred by its subcontractor through the fault of the government, only when the prime contractor has suffered actual damages itself, either because it has reimbursed the subcontractor or remains liable to the subcontractor for those damages. 99 Ct.Cl. at 442–44.

*City of Fredericksburg,* Nos. C 82–2015 and C 82–2044, slip op. at 7 (N.D.Iowa Aug. 18, 1982). Under the contract's mandatory arbitration clause, "a dispute about any matter involving the decision of the Engineer" must be submitted to arbitration upon the demand of either party. We find, therefore, that the City and Northwest have obligated themselves to submit the subject matter of this dispute to arbitration. Once this is determined, " 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator" and an order compelling arbitration must be issued. *John Wiley & Sons v. Livingston,* 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964) (*Wiley*). The principle issue in this case then is whether the City's objections are either "procedural" or bear on the final disposition of the underlying dispute.

This court had a recent occasion to review the difference between "procedural" and substantive objections to arbitration. In *Town & Country Ford, Inc.,* 709 F.2d at 512, 514, we held that notice requirements with stated time limits are procedural objections which will be left to the arbitrator. Hence, the City's objection that Northwest failed to deliver a demand within ten days of the Engineer's decision will not be entertained by this court. Similarly, we leave it to the arbitrator to decide the issues of whether Northwest's claim properly complies with EPA and the contract's requirements for certification and documentation. These are procedural requirements that go to the merits of the dispute. They do not alter the parties' contractual obligation to arbitrate any dispute involving an Engineer's decision. The same is true of the City's contention that the *Severin* doctrine renders the present dispute nonarbitrable. Although the substance of the City's *Severin* argument appears to be wholly without merit, *see* note 2 *infra,* we need not decide the question because it directly bears on the final disposition of Northwest's claim for additional compensation. It is enough to invoke arbitration that Northwest simply allege that it has been actually harmed by the Engineer's decisions. The truth or fal-

sity of the allegation will determine whether Northwest will receive compensation from the City. It does not change the fact that the parties have a dispute over the Engineer's decision. We therefore hold that the City and Northwest have agreed to arbitrate the subject matter of this dispute and that the City has breached the arbitration agreement. The district court's order compelling the City to arbitration with Northwest is affirmed.

## 2. The Stay Pending Arbitration

In consolidating Northwest's lawsuit against the City with the City's lawsuit against Northwest, Richmond and American, the district court held that both cases involved common questions of law and fact. The district court also found that both cases would require the same witnesses and evidence and that no benefit would be gained by allowing each case to pursue a separate course. Further, the district court found that the issues necessary to the resolution of the City's cause of action against Richmond and American fell within the scope of the City and Northwest's arbitration agreement. Thus, having stayed litigation between Northwest and the City pending their arbitration, the district court also stayed the City's litigation against Richmond and American. The City argues that the stay of its lawsuit against Richmond and American was error because the City had no arbitration agreement with Richmond or American. It is the City's position that absent an enforceable arbitration agreement between the parties, a stay may not be imposed under the Arbitration Act, 9 U.S.C. § 3. We disagree.

In *American Home Assurance Co. v. Vecco Concrete Construction Co.,* 629 F.2d 961 (4th Cir.1980), the Fourth Circuit was presented with this precise issue. In *American Home Assurance,* a general contractor on a waste water treatment plant construction project had subcontracted some of the work. The subcontractor was bonded. When the subcontractor defaulted, each party sued the other. In the end the general contractor was being sued by both

the subcontractor and the bonding company. Although the general contractor only had an arbitration agreement with the subcontractor, the court also stayed the bonding company's litigation against the subcontractor and the contractor. This type of procedure makes eminent sense when the third party litigation involves common questions of fact that are within the scope of the arbitration agreement. As the Fourth Circuit stated in *American Home Assurance*, "[w]hile it is true that the arbitrator's findings will not be binding as to those not parties to the arbitration, considerations of judicial economy and avoidance of confusion and possible inconsistent results nonetheless militate in favor of staying the entire action." 629 F.2d at 964. Section 3 of the Arbitration Act, which permits a court to stay "*any* suit ... brought in any of the courts of the United States upon *any* issue referable to arbitration," is broad enough to permit the stay of litigation between nonarbitrating parties as long as that lawsuit is based on issues referable to arbitration under an arbitration agreement governed by the Arbitration Act. 9 U.S.C. § 3 (emphasis added). In any event, the district court had the inherent power to grant the stay in order to control its docket, conserve judicial resources, and provide for a just determination of the cases pending before it. *American Home Assurance Co.*, 629 F.2d at 964. *Cf. Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co.*, 339 F.2d 440, 441–42 (2d Cir.1964) (no authority under 9 U.S.C. § 3 to stay action where litigant was not a party to the arbitration agreement, but stay permitted under district court's inherent power to control its docket). Therefore, the district court's order staying litigation between all the parties herein pending arbitration between the City and Northwest is affirmed.

### 3. *The Tenth Amendment*

 The City raises the same tenth amendment arguments against enforcement of the Arbitration Act as were raised by the City of Cedar Rapids in *Johnson Controls, Inc. v. City of Cedar Rapids*, 713 F.2d 370, 376–382 (8th Cir.1983). In *Johnson Controls, Inc.* we held that the tenth amendment does not bar enforcement of the Arbitration Act against an Iowa municipality. That holding is equally applicable to this case. Accordingly, we affirm the district court's orders.