C & H COMMERCIAL CONTRACTORS, INC., Plaintiff,

v.

**UNITED STATES of America, Defendant.**

No. 92–728 C.

United States Court of Federal Claims.

April 2, 1996.

Russell S. Gill, Biloxi, MS, for plaintiff.

Lacy R. Harwell, Jr., with whom were Assistant Attorney General Frank W. Hunger, David M. Cohen and Robert M. Hollis, Washington, DC, for defendant. Major H. Josseph Batey, United States Air Force, Arlington, VA, of counsel.

## OPINION AND ORDER

TURNER, Judge.

Plaintiff brought this action pursuant to the Contract Disputes Act of 1978, 41 U.S.C. §§ 605 & 609, seeking damages for delay and impact costs resulting from several contract modifications and extensions that occurred during performance of a construction contract with the United States Air Force.

This opinion addresses defendant's motion filed June 27, 1995 for partial summary judgment and plaintiff's cross-motion filed July 31, 1995 for partial summary judgment. For reasons stated below, we conclude that defendant's motion for summary judgment with respect to Count I of the complaint should be denied and that plaintiff's cross-motion for partial summary judgment concerning Count I should be granted. We further conclude that defendant's motion for summary judgment pertaining to Count IV of the complaint should be granted-in-part.

**I**

In September 1988, plaintiff (C & H) entered into a construction contract with the Air Force to renovate an office building at Arnold Air Force Base, Tennessee. The renovation included demolition, carpentry, mechanical and electrical work. The original contract amount was $1,846,213. The original performance time was 653 calendar days, and the work was to be performed in phases.

On November 10, 1988, a notice to proceed was issued resulting in an original contract completion date of August 25, 1990. During performance of the contract, sixteen contract modifications were executed, adding a total of 242 days to the performance period.[1] Plaintiff contends that delays, changes, disruptions and differing conditions that arose during the contract performance period resulted in significant additional costs. Plaintiff brings this suit to recover these costs, outlined in seven counts and totaling $417,-618.78.

In Count I of the complaint, plaintiff seeks delay and impact costs associated with thirteen of the contract modifications. Plaintiff alleges that nine of these modifications (P–3 through P–5, P–8 through P–12 and P–15) required additional contract time totalling 223 days.

Count IV of the complaint seeks an equitable adjustment in the contract price and a time extension as compensation for an alleged "differing site condition." The renovation project included asbestos abatement work requiring removal of floor tile and mastic. This job was performed under subcontract by Levy Industrial Contractors, Inc. (Levy). When Levy began work on the floor, it encountered an unforeseen and abnormal degree of cracking in the existing floor slabs. The Air Force representative in charge of the project directed Levy to remove all traces of asbestos from the cracked floor

---

1. The contract modifications are numbered P–1 through P–16. However, P–1 is an administrative unilateral modification and is not at issue in any of plaintiff's claims. Therefore, we conclude that only fifteen bilateral modifications (P–2 through P–16) are at issue in the case. However, only thirteen of the modifications are specifically addressed in the cross-motions under consideration (P–3 through P–6 and P–8 through P–16).

area, resulting in increased costs and time of performance for the asbestos abatement portion of the project. Plaintiff contends that the extensively cracked floor constituted a "differing site condition" which warranted an equitable adjustment in the contract price. Levy prepared a cost proposal of $16,172 for the extra time and expense incurred as a result of this differing condition. The proposal was forwarded by plaintiff to the Air Force, but no contract modification was issued. Plaintiff further alleges that the floor condition caused a twelve-day delay in completion of the entire project and seeks compensation for this delay.

By letter dated December 16, 1991, plaintiff sought an equitable adjustment of $604,736.71 as compensation for extra costs allegedly incurred as a result of the Air Force's repeated delays and changes in performance required under the contract. Plaintiff's claim was audited by the Defense Contract Audit Agency in early 1992. As a result of this audit and of a conference between plaintiff and the auditor, the claim was revised, resubmitted and recertified by letter dated March 31, 1992.

Based on the events at issue in this civil case, plaintiff and its officers were indicted by a federal grand jury in the Eastern District of Tennessee on charges of conspiracy to commit fraud against the United States, mail fraud and filing false claims. A criminal trial took place in late 1994, resulting in acquittal of plaintiff and its officers on all charges.

## II

■ Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202; *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1390 (Fed.Cir.1987). A "material fact" is a fact that could make a difference in the outcome of a case. *Curtis v. United States,* 144 Ct.Cl. 194, 199, 168 F.Supp. 213, 216 (1958), *cert. denied,* 361 U.S. 843, 80 S.Ct. 94, 4 L.Ed.2d 81 (1959). Only disputes over facts that might affect the

outcome of a suit properly will prevent the court from entering summary judgment. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2505.

■ The moving party initially bears the burden of demonstrating the absence of any genuine issue of material fact. That burden may be discharged by showing the absence of evidence in support of the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Once the moving party has discharged its burden, the burden then rests upon the party opposing the motion to demonstrate by sufficient evidence that a genuine issue of material fact positively remains. *Id.* at 324–25, 106 S.Ct. at 2553–54. According to the Federal Circuit: "The non-movant may not rest on its conclusory pleadings but, under Rule 56, must set out, usually in an affidavit by one with knowledge of specific facts, what specific evidence could be offered at trial." *Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1562–63 (Fed.Cir.1987). In considering motions for summary judgment, we view evidence and draw inferences in a light most favorable to the non-moving party. *Litton Indus. Products, Inc. v. Solid State Systems Corp.,* 755 F.2d 158, 163 (Fed.Cir. 1985).

## III

### A

Defendant contends that thirteen of the bilateral contract modifications signed by plaintiff are settlement agreements for the work covered in each particular modification. According to defendant, these modifications operate as comprehensive releases for each of the work delays or differing conditions, and thus plaintiff is barred from requesting additional damages arising from the work addressed in the modifications.

Plaintiff contends that the government assured it that release language contained in the modifications would not bar subsequent claims for delay/impact costs. Plaintiff also seeks summary judgment on Count I, asking that the government be estopped from raising its affirmative defense of accord and satisfaction. Although plaintiff characterizes its

cross-motion as a request for estoppel, we treat the cross-motion simply as a motion for partial summary judgment on defendant's accord and satisfaction defense.

The issue for resolution is whether P–3 through P–6 and P–8 through P–16 constitute an accord and satisfaction between the parties. We conclude that the bilateral modifications are clear and unambiguous on their face and that absent fraud, duress or misrepresentation by the government, the parol evidence rule would ordinarily bar extrinsic evidence to vary the release terms. However, we further conclude that the modifications were procured through the government's misrepresentations which render the releases voidable to the extent they would bar impact/delay claims.

Of the fifteen modifications negotiated between the parties, all but two included some form of waiver language purporting to release the government from liability for further equitable adjustments. These thirteen modifications are the subject of defendant's current motion for summary judgment. For purposes of deciding defendant's motion, we group the modifications by the specific language of their release clauses.

Modifications P–3 through P–6 and P–8 through P–12 contained the following release language: "[T]he Contractor hereby releases the Government from any and all liability under this contract for further equitable adjustments attributable to such facts or circumstances giving rise to these changes." These modifications did not contain reservations of plaintiff's right to seek damages.

Modification P–13 contained the following release language:

Pursuant to the terms of this contract and in consideration of the changes specified above, the Government of the United States, its officers, agents, and employees, are hereby released and discharged from all liabilities, demands, obligations, and claims, legal, equitable, contractual or administrative which the contractor (or any subcontractor or supplier) has or may have, now or in the future, arising under this contract or a subcontract, order, etc., thereunder, *including any and all impact and delay claims,* and any amounts that

may be due under the Equal Access to Justice Act, except for monies due for performing the contract in the total amount of $2,593,677.45.

This modification constitutes full and final release and accord and satisfaction of any and all claims which may arise from the addition of this work.

(Emphasis added.) P–13 did not contain any reservation of plaintiff's right to seek damages.

Modification P–15 contained the following release language:

[This modification] [a]dds resources for the contractor's releasing the Government for all claims associated with the above changes and those included in S/A P00014 to this contract. . . .

. . . .

This modification constitutes full and final release and accord and satisfaction of any and all claims under this contract for the changes specified herein.

P–15 did not contain any reservation of plaintiff's right to seek damages.

Modification P–16 contained the following release language:

Pursuant to the terms of this contract and in consideration of the changes specified above, the Government of the United States, its officers, agents, and employees, are hereby released and discharged from all liabilities, demands, obligations, and claims, legal, equitable, contractual or administrative which the contractor (or any subcontractor or supplier) has or may have, now or in the future, arising under this contract or a subcontract, order, etc., thereunder, *including any and all impact and delay claims,* and any amounts that may be due under the Equal Access to Justice Act, except for monies due for performing the contract in the total amount of $2,613,417.55. This modification constitutes full and final release and accord and satisfaction of any and all claims under this contract for the changes specified herein.

(Emphasis added.) P–16 did not contain any reservation of plaintiff's right to seek damages.

252

## B

Defendant contends that plaintiff's claims for damages resulting from defendant's delays are barred by accord and satisfaction.

■ "Accord and satisfaction denotes 'one of the recognized methods of discharging and terminating an existing right' and constitutes 'a perfect defense in an action for the enforcement of a previous claim, whether that claim was well founded or not.'" *Chesapeake & Potomac Tel. Co. v. United States,* 228 Ct.Cl. 101, 108, 654 F.2d 711, 716 (1981) (quoting 6 ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 1276 (1962)). Under this doctrine, both an accord and satisfaction must be present. *Spirit Leveling Contractors v. United States,* 19 Cl.Ct. 84, 92 (1989). An accord is an agreement by one party to supply or perform, and by the other party to accept, in settlement or satisfaction of an existing claim, something other than what originally was due. *Chesapeake & Potomac,* 228 Ct.Cl. at 108, 654 F.2d at 716. Satisfaction is the execution and/or performance of the agreement, the actual giving or taking of some agreed item or service. *Id.*

■ A party claiming an accord and satisfaction must show "'proper subject matter, competent parties, meeting of the minds of the parties, and consideration.'" *Brock & Blevins Co. v. United States,* 170 Ct.Cl. 52, 59, 343 F.2d 951, 955 (1965) (quoting *Nevada Half Moon Mining Co. v. Combined Metals Reduction Co.,* 176 F.2d 73, 76 (10th Cir. 1949), *cert. denied,* 338 U.S. 943, 70 S.Ct. 429, 94 L.Ed. 581 (1950)). Generally this entails "a mutual agreement between the parties in which one pays or performs and the other accepts payment or performance in satisfaction of a claim or demand which is a bona fide dispute." *Id.*

■ "As a general rule, the execution by a contractor of a release which is complete on its face reflects the contractor's unqualified acceptance and agreement with its terms and is binding on both parties." *Clark Mechanical Contractors Inc. v. United States,* 5 Cl.Ct. 84, 86 (1984); *Metric Constr.*

*Co. v. United States,* 1 Cl.Ct. 383, 396 (1983); *Inland Empire Builders, Inc. v. United States,* 191 Ct.Cl. 742, 752, 424 F.2d 1370, 1376 (1970). It is also well settled that ordinarily an executed bilateral contract modification that contains no reservations constitutes an accord and satisfaction of a claim. *Merritt–Chapman & Scott Corp. v. United States,* 198 Ct.Cl. 223, 228–230, 458 F.2d 42, 44–46 (1972); *Brock & Blevins,* 170 Ct.Cl. at 59, 343 F.2d at 955; *Cannon Constr. Co. v. United States,* 162 Ct.Cl. 94, 100, 319 F.2d 173, 177 (1963). Moreover, any reservation of a right or a claim for damages from a bilateral contract modification must ordinarily be manifestly and explicitly set forth in the contract modification which incorporates the parties' settlement. *Id.*

■ These statements seem to describe the transactions of the parties here. Each bilateral contract modification relied on by defendant, P–3 through P–6 and P–8 through P–16, seemed to constitute an accord and satisfaction covering its respective change in contract requirements. All thirteen modifications contained alterations to the original contract. These modifications resulted in a 223 day extension of the original contract. All thirteen modifications were the result of negotiations between the parties. All thirteen modifications were executed by both plaintiff and the Air Force.

It is also clear that the subject matter of the thirteen contract modifications was proper; plaintiff and the Air Force were competent parties; there appeared to be a meeting of the minds between the parties;[2] and consideration was given by both parties. Under the thirteen bilateral agreements between plaintiff and the Air Force, the Air Force gave payment and/or time extensions which plaintiff accepted as satisfaction of its claims. These modifications contained release clauses which in clear terms stated that for consideration the Air Force was released from liability for further equitable adjustments attributable to the facts and circumstances that had given rise to the modifications.

**2.** Plaintiff contends that the modifications did not constitute an accord and satisfaction because there was no meeting of the minds regarding

delay and impact costs. We address this argument in our discussion of the misrepresentation issue. *See infra.*

In addition, none of the thirteen bilateral modifications on which defendant relies contained any language regarding a reservation by plaintiff of any right or claim for damages. Plaintiff executed the modifications without any such written reservation and accepted the agreed-upon compensation, in lieu of any claim which plaintiff might otherwise pursue. Plaintiff's execution of the modifications and acceptance of benefits apparently constituted an accord and satisfaction for all costs arising from the differing conditions and changes in the work to be done. *See Brock & Blevins,* 170 Ct.Cl. at 59, 343 F.2d at 955; *Cannon Constr.,* 162 Ct.Cl. at 100, 319 F.2d at 177.

### C

Plaintiff argues that the bilateral contract modifications do not constitute an accord and satisfaction with respect to delay and impact costs because despite their literal language, the modifications were not intended to resolve plaintiff's delay/impact costs and the parties had agreed that plaintiff could submit a subsequent claim for these costs, notwithstanding explicit language to the contrary in the modification agreements.

Plaintiff attempts to avoid the written terms of the bilateral modification agreements based on alleged preexisting oral reservations. Plaintiff contends that it never intended to waive its right to bring claims concerning delay/impact costs; that during negotiations surrounding the modification, the parties expressly agreed that the modifications would not affect delay/impact costs, which could then be pursued in a subsequent claim; that plaintiff expressly refused to execute the modifications unless the government agreed to exclude delay/impact costs from the modifications; that it specifically reserved the right to file claims at the conclusion of the project for delay/impact costs; that there was no meeting of the minds between the parties concerning delay/impact costs; and that delay/impact costs could not have been included in the modifications. In effect, plaintiff asks us to ignore the clear, unambiguous written language of the contract modifications.

In support of these allegations, plaintiff relies on (1) deposition testimony of C & H officers containing their recollections of the negotiations which occurred in connection with execution of the bilateral agreements; (2) a memorandum written by Air Force Contracting Officer Dowe Jones; and (3) Jones's testimony at plaintiff's criminal trial. However, plaintiff's position would appear to conflict with the parol evidence rule and must be reconciled before plaintiff's attempt to avoid the impact of the broad releases will be considered.

The parol evidence rule is one of substantive law, and not a rule of evidence. 4 SAMUEL WILLISTON, WILLISTON ON CONTRACTS, 631 (3d ed. 1961); *Sylvania Elec. Products Inc. v. United States,* 198 Ct.Cl. 106, 126, 458 F.2d 994, 1005 (1972). The general rule is that parol evidence will not be permitted to vary the terms of an unambiguous written contract. *Northern Assurance Co. of London v. Grand View Bldg. Ass'n,* 183 U.S. 308, 361, 22 S.Ct. 133, 153, 46 L.Ed. 213 (1902) ("[C]ontracts in writing, if in unambiguous terms, must be permitted to speak for themselves, and cannot by the courts, at the instance of one of the parties, be altered or contradicted by parol evidence, unless in case of fraud or mutual mistake of facts."); *Greco v. Department of the Army,* 852 F.2d 558, 560 (Fed. Cir.1988) ("Only if there is ambiguity [in the terms of the agreement] should parol evidence be considered."); *Beta Systems Inc. v. United States,* 838 F.2d 1179, 1183 (Fed.Cir. 1988) ("The general rule is that extrinsic evidence will not be received to change the terms of a contract that is clear on its face."); *Bistline v. United States,* 226 Ct.Cl. 282, 286–87, 640 F.2d 1270, 1274 (1981) ("The language of the [contract] is complete and unambiguous and there is no contention that it was executed as the result of fraud, accident, or mistake. Consequently, the parol evidence rule forbids the admission of [extrinsic] evidence ... as well as the consideration of such evidence ...."); *Perry & Wallis, Inc. v. United States,* 192 Ct.Cl. 310, 315, 427 F.2d 722, 725 (1970) ("Where a contract is not ambiguous, the wording of the contract controls its meaning and resort cannot be had to extraneous circumstances or subjective interpretations to determine such mean-

ing."); *Bishop Eng'g Co. v. United States,* 180 Ct.Cl. 411, 416, 1967 WL 9033 (1967) ("a contract [is not] rendered ambiguous by the mere fact that the parties disagree as to its meaning when the disagreement is not based on reasonable uncertainty of the meaning of the language used").

The thirteen bilateral modifications on which defendant relies are clear and unambiguous. Indeed, they could hardly be more clear. Each of the bilateral modifications can have but one reasonable meaning, i.e., that for each change in work or differing site condition, a final settlement was reached between plaintiff and the Air Force. Each modification clearly outlines the compromise reached between the parties. All of the bilateral modifications were executed by both plaintiff and the Air Force and contain release clauses. None of the modifications contains any reservation clause. Thus, plaintiff's evidence offered to vary the bilateral modifications seems to be prohibited under the parol evidence rule.

**D**

■■■ There are exceptions to the parol evidence rule applicable when a written agreement is based upon mutual mistake or is procured by one of the parties through fraud or material misrepresentation on which the other party reasonably relies. We find one of these exceptions applicable here and thus permit plaintiff to vary the terms of the written releases. Expressed in contract law terms, we find that the comprehensive releases are voidable *pro tanto,* i.e., to the extent that they would bar plaintiff's current claims for impact/delay costs. The deposition testimony, documents and previous trial testimony supplied by plaintiff provide evidence of misrepresentation by the government.

C & H President John Hershman and C & H Vice–President Don Hershman, provided evidence by deposition testimony. In their deposition testimony, the Hershmans state that prior to signing each of the bilateral modifications, they expressed concern that the release language would foreclose them from bringing additional claims for delay/im-

pact costs; that they objected to the release language in the modifications, but the Air Force assured them that they would be entitled to submit a subsequent claim for delay/impact costs despite the express release language to the contrary; and that they signed the agreements relying on the Air Force's assurances.

C & H President John Hershman testified: "We were assured each and every time that the language specifically did not mean anything.... [I]t would not prohibit us from filing a delay and impact claim if we felt that we had been delayed." Pl.'s Resp. to Def.'s Mot. for Partial Summ.J., App. 11 at 55–56. John Hershman also stated that when he told Contracting Officer Dowe Jones that C & H would have to pursue delay and impact costs, "[s]he advised me that that was my right under the contract ... and that I had not signed anything and would not be signing anything that would preclude me from doing that." *Id.* at 56.

C & H Vice–President Don Hershman's deposition echoes these allegations. Specifically, in regards to negotiation of P–7, Don Hershman stated: "I had been told on all the previous mods that the release language was in, that it was just a standard release, and it did not mean anything as far as coming back for a claim or coming back at the end of the project, that it was just dealing with direct cost of that change order and not to worry about it." Pl.'s Resp. to Def.'s Mot. for Partial Summ.J., App. 12 at 72. Defendant presents no evidence to counter the sworn testimony of these corporate officers, but merely reiterates its position that any external evidence of the contract's meaning is barred by the parol evidence rule.

■■■ With respect to P–7, defendant argues that the lack of release language in that modification contradicts plaintiff's claim that the C & H officers did not understand the legal significance of the releases.[3] When John Hershman negotiated P–7 with Air Force Contracting Officer Temple Bowling, he refused to sign the modification unless the release language was removed. Consequent-

---

3. P–7 is not involved in Count I.

ly, P–7 was executed without release language. Defendant argues that the absence of release language in P–7 is evidence that plaintiff "enjoyed the power to negotiate the terms of its bilateral modifications, including the demonstrable ability to demand that the release not be included in a modification." Def.'s Reply to Pl's Opp'n to Def.'s Mot. for Partial Summ.J. at 17.

We find defendant's argument unpersuasive. The absence of release language in P–7 may, as defendant suggests, serve as evidence that plaintiff could have negotiated its other modifications without release language. However, it is not directly relevant to the issue of whether government agents misrepresented the legal significance of the release language in some or all of the other modifications as an inducement to include the release language.

Plaintiff also submits the deposition testimony of C & H Secretary Monica Reed (also referred to as Monica Baldwin) in support of its claim. According to Reed, "Each time we received a modification, if it had the release language, ... Don ... would call whoever the contracting officer might be at that time to verify that the release language did not mean we were giving up our rights to file a delay claim." Pl.'s Resp. to Def.Mot. for Partial Summ.J., App. 10 at 38. Defendant offers no evidence to rebut Reed's testimony.

Plaintiff's most compelling evidence is that of Dowe Jones, one of the Air Force contracting officers with authority over the modifications at issue. While under oath during plaintiff's criminal trial, Jones testified that plaintiff expressed repeated concern over release language when the modifications were being executed and that she had told them that the modifications represented adjustment of direct costs for particular work in issue but not for delay. Pl.'s Resp. to Def. Mot. for Partial Summ.J., App. 2 at 9–10. Jones further testified that when the C & H officers expressed concern that they might be giving up the right to file a claim, she told them "no, the Government would not require you to give up any right that you have." *Id.* at 10.

Further, Jones authored a highly relevant internal Air Force "Memo for the File" written on September 4, 1991. The memorandum was written regarding P–12 and reads as follows:

> The current Contracting Officer, Joe Warren, the prior Contracting Officer, Dowe L. Jones, and the prior Contracting Administrator, Tony Clayborne, got together to discuss the notation on contract modification # P00012 by Monica Baldwin, C & H Secretary. As we remember the situation at that time, we recall that concern was expressed by C & H Vice–President, Don Hershman, that this project was in trouble because of all the change orders issued. His concern was that he did not want to sign any document that could be construed as giving up his right to file a claim when the contract was completed. We all explained that the clause included in each modification saying that the amount agreed on for the modification was the full compensation was not intended to preclude the contractor's rights to file a future claim, but meant that the amount of the modification represented the equitable adjustment for the particular work identified in the modification and that the contractor accepted and agreed to that amount for the identified work. We further explained that at the conclusion of the contract, if the contractor feels that the actions or inactions of the Government or the total number of change orders collectively renders an additional impact, then he may file a claim asking for consideration. Mr. Clayborne had several conversations with Mr. Hershman to this [effect].

Pl.'s Resp. to Def.'s Mot. for Partial Summ. J., App. 1. Thus, according to one of the Air Force contracting officers in charge of the contract, at the time the modifications were executed, the parties did not understand the release language to mean what the government now argues it clearly and unambiguously does mean.

Defendant presents no evidence contradicting the substance of Jones's statements, i.e., that the Air Force did, in fact, assure plaintiff that the release language included in the contract modifications would not preclude bringing a subsequent suit for delay and impact costs. Instead, defendant now mere-

ly argues that Jones's evidence is barred by the parol evidence rule.

### E

Defendant argues that Jones's evidence is at least partially irrelevant and is inadmissible as not a contemporaneous transaction and as hearsay. Specifically, defendant contends that Jones's testimony is not informative as to the intent of the other two contracting officers with authority over the modifications in issue. Defendant argues that Jones's testimony and memorandum have no legal consequence regarding the contract modifications that came after her tenure as contracting officer and that summary judgment should be granted at least with respect to these modifications (P–14, P–15, & P–16).

Jones's memorandum is dated September 4, 1991; thus, it was written subsequent to the final modification at issue in the motions (modification P–16 was executed in March 1991). However, the memorandum seems to have been written in reference to P–12, and Jones's testimony does not directly address any modifications after P–12. Thus, the memorandum could, as defendant contends, be interpreted to address only P–12 and previously executed modifications.

Although the memorandum evidence may not be directly relevant to modifications executed after P–12, the depositions of Messrs Hershman and Monica Reed state that plaintiff received the same assurances from all of the contracting officers they worked with, throughout the entire series of modifications. Don Hershman stated in his deposition that he was assured that even the seemingly unequivocal release language of P–16, specifically including "any and all impact and delay claims," would not preclude plaintiff from bringing a subsequent claim. Pl.'s Resp. to Def.'s Mot. for Partial Summ.J., App. 12 at 114–115.

■ Even without Jones's evidence, the statements of the C & H affiants are clear regarding the government's representations concerning the modifications entered subsequent to P–12. Plaintiff's factual allegations of misrepresentation regarding these modifi-

cations are clear, and defendant does not contradict them. As to the admissibility of Jones's evidence, the statements are plainly admissible as relevant statements of a government agent within the scope of her employment. FED.R.EVID. 801(d)(2)(D).

The statements of the C & H affiants and Jones's testimony and memorandum directly contradict the current position of the United States government as to the effect of the release language contained in the modifications.

### F

■ For the purpose of resolving this motion, we assume that the government's position in this litigation (i.e., that C & H's execution of the modifications containing comprehensive release language constitutes a bar to claims for delay/impact costs) is consistent with its real position at the time each modification was executed. Based on this assumption, and further assuming plaintiff's version of the facts to be true, the government is guilty of material misrepresentations on which plaintiff reasonably relied. RESTATEMENT (SECOND) OF CONTRACTS describes when misrepresentation makes a contract voidable: "If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient." RESTATEMENT (SECOND) OF CONTRACTS § 164(1) (1979). Extrinsic evidence is admissible to prove that a plaintiff entered a contract based on a misrepresentation by defendant. *T.L. Roof & Assocs. Constr. Co. v. United States,* 28 Fed.Cl. 572 (1993).

■ It is generally understood that four conditions must be met before a contract may be voided for misrepresentation: (1) a misrepresentation was made; (2) the misrepresentation was either fraudulent or material; (3) reliance; and (4) justification in reliance. RESTATEMENT (SECOND) OF CONTRACTS § 164; *Barrer v. Women's Nat'l Bank,* 761 F.2d 752, 758 (D.C.Cir.1985).

It is reasonable to infer from the deposition testimony of C & H's officers and from

Jones's memorandum and trial testimony that (1) Air Force personnel made repeated misrepresentations to plaintiff; (2) these misrepresentations were material; (3) plaintiff relied on these representations in assenting to the agreements; and (4) its reliance upon assurances by professional contracting officers who would be reviewing subsequent delay claims was justified.

We find the evidence supporting plaintiff's assertion of misrepresentation convincing for several reasons. The deposition testimony are detailed in describing the government's representations (apparently misrepresentations) to plaintiff and plaintiff's reliance thereon. The in-court testimony of one of the contracting officers is completely consistent with plaintiff's version of the facts and supports the statements of plaintiff's affiants. A memorandum prepared by the testifying contracting officer further supports plaintiff's contentions. Finally, nowhere does the government specifically contest the details of plaintiff's statements of fact.

In response to plaintiff's assertions of misrepresentation and the evidence plaintiff has provided, defendant merely reiterates its position that all extrinsic evidence of misrepresentation should be barred by the parol evidence rule or that this evidence should be barred as irrelevant or procedurally improper. Nowhere does defendant respond to the substance of plaintiff's misrepresentation claim or deny that the government misrepresented the significance of the releases to plaintiff. Because the government does not contradict the factual details of plaintiff's deposition testimony, we conclude that no genuine issues of material fact remain and that plaintiff has met its burden under RCFC 56 with regard to defendant's affirmative defense of accord and satisfaction.

We are faced with what we hope is an unusual factual situation—one in which government representatives promised a contractor that it would not be precluded from bringing future delay claims by signing a release and then asserted the release as a bar to such claims. Such conduct is outrageous.

To recover on Count I, plaintiff will, of course, still need to prove that delay and impact damages were incurred and that it is entitled to compensation under the principles of government contract law.

## IV

Defendant moves for summary judgment on Count IV on the ground that plaintiff's action to recover costs incurred based on differing site conditions is barred by *Severin v. United States*, 99 Ct.Cl. 435, 1943 WL 4198 (1943), *cert. denied*, 322 U.S. 733, 64 S.Ct. 1045, 88 L.Ed. 1567 (1944). Defendant contends that plaintiff's claim under Count IV is a "pass-through" claim on behalf of its subcontractor, Levy. According to defendant, when a subcontractor has exonerated its prime from liability on a claim, the prime cannot recover from the government on behalf of the subcontractor with respect to the claim and, thus, Count IV is barred.

Under *Severin*, a prime contractor may only recover from the government for damages incurred by its subcontractor if the prime has itself suffered damage. *Id.* at 443. In this context, damages are not limited to payments actually made to subcontractors but can include potential liability. *Id.* However, where a prime contractor is not liable to a subcontractor, the prime cannot recover from the government for costs incurred by the subcontractor. *Id.* at 442–44.

Levy performed asbestos abatement work at the Arnold Air Force Base site under a subcontract with plaintiff. Plaintiff claims that differing site conditions resulted in increased costs and additional delay in the asbestos abatement work. On June 19, 1989, plaintiff sought a change order to increase payment for this work and to grant additional time to perform the work. This request was denied. By letter dated September 25, 1991, Levy informed plaintiff that the employee who had overseen the project and knew the details of Levy's claim was no longer with the company and could not be found. Pl.'s Resp. to Def.'s Mot. for Partial Summ.J., App. 9. On June 22, 1995, Levy acknowledged to the Air Force that it had no witnesses on staff who could testify in support of the claim and that its records were insufficient to support the claim. Levy

agreed that it had no interest in pursuing the claim and considered it abandoned. Def.'s Mot. for Partial Summ.J., App. at 1–2. Defendant contends that Levy's abandonment of its claim precludes plaintiff's claim for delay damages based on the subcontractor's claim.

Plaintiff argues that *Severin* applies only in those limited circumstances where a subcontractor has explicitly and completely exonerated the prime of any liability. Plaintiff contends that defendant's showing, consisting of a letter signed by Levy stating that the subcontractor "considers the claim abandoned," falls short of the *Severin* requirement. According to plaintiff, the burden of proving that a prime contractor is not liable to its subcontractor is on the government and the letter supplied by the government is not sufficient to meet such burden.

However, plaintiff has "confessed the Defendant's Proposed Findings of Uncontroverted Fact that Levy in fact has abandoned its claim," (Pl.'s Resp. to Def.'s Mot. for Partial Summ.J. at 15) and "acknowledges that Levy no longer desires to pursue its pass through claim" (*Id.* at 17). Therefore, we conclude that the *Severin* doctrine applies to prevent plaintiff from pursuing the claim set out in Count IV to the extent that it is a "pass-through" claim asserted on behalf of Levy.

Plaintiff does, however, specifically maintain an independent claim for delay damages based on the differing site conditions at issue in Count IV. To the extent plaintiff can demonstrate that it independently incurred delay damages separate from of any "pass-through" claim for Levy, it will be allowed to pursue such damages. The court in *Severin* specifically recognized such recovery as allowable, permitting the prime to recover for extra overhead costs incurred because of the delay to its subcontractor. *Severin*, 99 Ct.Cl. at 442.

 Material facts remain in dispute regarding plaintiff's independent claim for delay costs related to the asbestos abatement work performed by Levy; consequently, summary judgment cannot be awarded with respect to this portion of Count IV.

V

Defendant's motion for summary judgment on Count I of the complaint is DENIED, and plaintiff's cross-motion for partial summary judgment on Count I (limited to the issue of defendant's affirmative defense of accord and satisfaction) is GRANTED. Defendant's motion for summary judgment concerning Count IV of the complaint is GRANTED–IN–PART (limited to plaintiff's "pass-through" claim on behalf of its subcontractor).

The effect of these rulings is that the government's affirmative defense of accord and satisfaction is deemed stricken as is plaintiff's "pass-through" claim on behalf of its subcontractor Levy Industrial Constructors, Inc.

Entry of judgment pursuant to the ruling on Count IV shall be withheld pending resolution of the remaining issues.