Opinion for the court filed by Circuit Judge PROST. Dissenting opinion filed by Circuit Judge NEWMAN.
PROST, Circuit Judge.
Bell BCI Company (“Bell”) and the National Institutes of Health (“NIH”) entered into Contract No. 263-98-C-0102 on March 26, 1998. The fixed-price contract originally required Bell to construct a new five-story laboratory building by June 29, 2000. After several significant changes to the contract, Bell substantially completed a six-story laboratory building on February 8, 2002. After the government denied Bell’s claim for equitable adjustment, Bell sued the government for breach of contract and requested that the United States Court of Federal Claims review several of the contracting officer’s (“CO’s”) decisions. The court ultimately found for Bell in all regards. Bell BCI Co. v. United States, 81 Fed.Cl. 617 (2008). The government now appeals the decision in its entirety. For the reasons set forth below, we affirm-in-part, vacate-in-part, and remand.
BACKGROUND
In 1998, the government decided to construct a new building on the NIH campus in Bethesda, Maryland. The government awarded the contract to Bell, even though Bell was not the lowest bidder. The contract included language from the Federal Acquisition Regulations (“FAR”), 48 C.F.R. § 52.243^4(d), which expressly allows for equitable adjustment:
If any change under this clause causes an increase or decrease in the Contractor’s cost of, or the time required for, the performance of any part of the work under this contract, whether or not changed by any such order, the Contracting OfScer shall make an equitable *1339 adjustment and modify the contract in writing.
Bell was to complete the five-story building by June 29, 2000. It began construction on April 1, 1998, and proceeded on schedule until December 1998. At that time, the government realized it had a budget surplus and decided to add another floor (a “new” fourth floor) to the building. To govern the contractual changes, the parties entered into Modification 93 (“Mod 93”) on October 2, 2000. Mod 93 included a price increase to pay for the new floor, and gave a revised project completion date. Bell agreed to meet fourteen “substantial completion” milestones during the construction period, and the parties agreed upon liquidated damages of $266 per day of delay. Paragraph 4 of Mod 93 says that the modification will
increase the contract amount by $2,296,963 ... as full and equitable adjustment for the remaining direct and indirect costs of the Floor 4 Fit-out (EWO 240-R1) and full and equitable adjustment for all delays resulting from any and all Government changes transmitted to the Contractor on or before August 31, 2000.
Paragraph 8 of Mod 93 reads:
The modification agreed to herein is a fair and equitable adjustment for the Contractor’s direct and indirect costs. This modification provides full compensation for the changed work, including both Contract cost and Contract time. The Contractor hereby releases the Government from any and all liability under the Contract for further equitable adjustment attributable to the Modification.
The language in paragraph 8 was repeated in a number of subsequent modifications.
After the parties adopted Mod 93, Mr. Temme (who worked for NIH’s construction quality manager) and Mr. Kutlak (the CO’s technical representative) informed NIH personnel that NIH should refrain from making additional changes to the project. Bell BCI, 81 Fed.Cl. at 623. Nonetheless, the government issued 113 additional modifications, which incorporated 216 Extra Work Orders (“EWOs”). An additional fifty-eight issued EWOs were never incorporated into any modification. Bell ultimately missed thirteen of the fourteen milestone dates set forth in Mod 93. Shortly after Bell completed construction, it submitted a Request for Equitable Adjustment to the CO. The CO denied the claim, and instead asserted claims against Bell for liquidated damages, credits due the government, the cost of retests, and estimated costs for “outstanding major deficiencies.” Id. at 624.
At that point, Bell filed suit in the Court of Federal Claims. Both parties filed cross-motions for summary judgment, which the court denied. Bell BCI Co. v. United States, 72 Fed.Cl. 164, 170 (2006). The court granted the government’s motion to dismiss Bell’s promissory estoppel claim. Id. at 167-68. After trial, the court found in favor of Bell. Bell BCI, 81 Fed.Cl. at 617. In total, the court awarded Bell $6,200,672, which breaks down as follows: (1) $2,058,456 in labor inefficiency costs attributable to the cumulative impact of the changes; (2) $1,602,053 for the delays of remaining on the project after April 30, 2001; (3) $366,051 as a 10% profit on the delay and labor inefficiency costs; (4) $563,125 as the unpaid balance of the contract price; and (5) $1,610,987 for unresolved changes covered by the fifty-eight EWOs not incorporated into any modification. Id. at 619. The court also rejected NIH’s claim to liquidated damages, id. at 640, and sustained subcontractor Stromberg Metal’s cumulative impact claim, id. at 641. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(3).
*1340 DISCUSSION
The trial court’s findings of fact are reviewed under the “clearly erroneous” standard, while its legal holdings are reviewed de novo. Seaboard Lumber Co. v. United States, 308 F.3d 1283, 1292 (Fed. Cir.2002). Credibility and intent determinations are questions of fact. Comm. Contractors, Inc. v. United States, 154 F.3d 1357, 1369 (Fed.Cir.1998); Dureiko v. United States, 209 F.3d 1345, 1356 (Fed. Cir.2000). Contract interpretation is a question of law. Lucent Techs., Inc. v. Gateway, Inc., 543 F.3d 710, 717 (Fed.Cir.2008).
Different standards of review are applicable to different aspects of a damages award. “[T]he clear error standard governs a trial court’s findings about the general type of damages to be awarded (e.g., lost profits), their appropriateness (e.g., foreseeability), and rates used to calculate them (e.g., discount rate, reasonable royalty). The abuse of discretion standard applies to decisions about methodology for calculating rates and amounts.” Home Sav. of Am. v. United States, 399 F.3d 1341, 1347 (Fed.Cir.2005). The evidentiary basis for a court’s ruling on damages need only be “sufficient to enable a court or jury to make a fair and reasonable approximation,” and as long as a party can clearly establish a reasonable probability of damage, “uncertainty as to the amount will not preclude recovery.” Seaboard Lumber, 308 F.3d at 1302 (quoting Specialty Assembling & Packing Co. v. United States, 174 Ct.Cl. 153, 355 F.2d 554, 572 (1966) and Ace-Fed. Reporters, Inc. v. Barram, 226 F.3d 1329, 1333 (Fed.Cir.2000) (quotation marks omitted)).
A. Cumulative Impact
The first issue on appeal is whether the release language in paragraph 8 of Mod 93, repeated in later modifications, covers Bell’s cumulative impact claims. Paragraph 8 says that the modification “provides full compensation for the changed work” and that Bell “hereby releases the Government from any and all liability under this Contract for further equitable adjustment attributable to the Modification.”
In finding for Bell, the Court of Federal Claims drew a distinction between a “delay” claim and a “disruption” or “cumulative impact” claim. The court stated that “[although the two claim types often arise together in the same project, a ‘delay’ claim captures the time and cost of not being able to work, while a ‘disruption’ claim captures the cost of working less efficiently than planned.” Bell BCI, 72 Fed.Cl. at 168. The court repeatedly stated that the release did not address cumulative impact or disruption claims, but failed to articulate why this was the case. See, e.g., Bell BCI, 81 Fed.Cl. at 619, 623, 629-30, 639. The court then looked to the contract’s “Changes” clause, excerpted above as FAR 52.243-4, and determined that “[u]nless provided otherwise, the bilateral modifications will compensate the contractor for performing the changed work, but not for the impact of multiple change orders on the unchanged work.” Id. at 637. Because in the court’s view Mod 93 did not “provide otherwise,” the court concluded that Bell did not release its cumulative impact claims.
We do not question the court’s finding that, in light of the numerous changes to the contract, Bell suffered a cumulative impact. But the issue is not whether Bell suffered a cumulative impact—it is whether Bell released the government from liability for that impact.
The government argues that Bell’s cumulative impact claims, if they exist, are barred by accord and satisfaction. Accord and satisfaction occur “when some performance different from that *1341 which was claimed as due is rendered and such substituted performance is accepted by the claimant as full satisfaction of his claim.” Cmty. Heating & Plumbing Co. v. Kelso, 987 F.2d 1575, 1581 (Fed.Cir.1993). To prove accord and satisfaction, the government must show “(1) proper subject matter; (2) competent parties; (3) a meeting of the minds of the parties; and (4) consideration.” O’Connor v. United States, 308 F.3d 1233, 1240 (Fed.Cir.2002). In this case, no dispute exists regarding proper subject matter or the competence of the parties. The Court of Federal Claims, however, found that Bell and the government never had any meeting of the minds, and that the government did not provide consideration for Bell’s release. Bell BCI, 81 Fed.Cl. at 639. The court felt that “prudent contracting parties surely would be specific in describing the exact scope of any release or reservation of rights.” Id. Finally, the court stated that “[t]o the extent ambiguity exists in Modification 093 or in the modifications collectively, NIH as the drafter of these documents ‘must bear the risk of any contractual uncertainty, ambiguity or inequitable consequence.’ ” Id. at 639-40 (quoting Firestone Tire & Rubber Co. v. United States, 195 Ct.Cl. 21, 444 F.2d 547, 551 (1971)).
The government argues that the more than $2,000,000 described in paragraph 4 of Mod 93 was “full compensation for the changed work”—in other words, that amount was paid as consideration for Bell’s release. The government also claims that because the release language is not ambiguous, parol evidence cannot be considered. To the extent extrinsic evidence is permitted, however, the government points to evidence indicating Bell “knew of the possibility of a cumulative impact claim and also knew how to reserve it,” but “Bell simply failed to do so.”
Because a release is contractual in nature, it is interpreted in the same manner as any other contract term or provision. See Metric Constructors, Inc. v. United States, 314 F.3d 578, 579 (Fed.Cir.2002) (“This case, like many contract disputes, turns on the interpretation of [the release].... ”); Restatement (Second) of Contracts § 284 cmt. c (1981) (“The rules of interpretation that apply to contracts generally apply also to writings that purport to be releases.”). To resolve the debate, then, we must first determine whether the release language in Mod 93 is unambiguous. Only in the event of an ambiguity may we examine extrinsic or parol evidence. McAbee Constr., Inc. v. United States, 97 F.3d 1431, 1434 (Fed.Cir.1996). We look to the plain language of the release, as “if the ‘provisions are clear and unambiguous, they must be given their plain and ordinary meaning.’ ” Id. at 1435 (quoting Alaska Lumber & Pulp Co. v. Madigan, 2 F.3d 389, 392 (Fed.Cir.1993)); see Barron Bancshares, Inc. v. United States, 366 F.3d 1360, 1375-76 (Fed.Cir.2004).
We hold that the language in paragraph 8 of Mod 93 is unambiguous, and the court clearly erred in holding that Bell did not release its cumulative impact claims attributable to that modification. The language plainly states that Bell released the government from any and all liability for equitable adjustments attributable to Mod 93. At best, there may be ambiguity as to which claims are “attributable to” a given modification, but we cannot glean any ambiguity about which types of claims are released-Mod 93 clearly, unambiguously releases the government from “any and all” liability. As the Supreme Court stated in United States v. William Cramp & Sons Ship & Engine Building Co., “[i]f parties intend to leave some things open and unsettled, their intent so *1342 to do should be made manifest.” 206 U.S. 118, 128, 42 Ct.Cl. 532, 27 S.Ct. 676, 51 L.Ed. 983 (1907). Further, the government’s payment of over $2,000,000 in Mod 93 constitutes adequate consideration for Bell’s release.[1] See Restatement (Second) of Contracts § 79 cmt. c (1981); see also Aviation Contractor Employees, Inc. v. United States, 945 F.2d 1568, 1573-74 (Fed.Cir.1991).
In the absence of an ambiguity, we decline to examine the parties’ extrinsic evidence. We therefore remand to the Court of Federal Claims so it can determine which of Bell’s cumulative impact claims, if any, are “attributable to” modifications other than those modifications that contain the release language discussed above.
B. Delay and 10% Profits
For the same reason, we take issue with the Court of Federal Claims’s decision to award $1,602,053 for the delays of remaining on the project after April 30, 2001. The court arrived at its April 30, 2001 date because Bell originally was to complete construction by June 29, 2000, and Bell received extensions from NIH accounting for 304 days (making the new contract completion date April 30, 2001). Bell did not finish construction until February 8, 2002, however, and the 284 days between April 30, 2001 and February 8, 2002 are at issue in Bell’s “delay” claim.
Again, we defer to the trial court’s finding that “evidence of excusable delay from changed work” was “so overwhelming that a reasonable person could not reach a contrary result.” Bell BCI, 81 Fed.Cl. at 640. We also defer to the court’s determination that the government’s expert, who concluded that NIH caused just thirty-two days of delay on the project, was “simply ... not credible.” Id. But this does not end our inquiry, since as before the question is whether the release language present in Mod 93 and later modifications excuses the government from liability for Bell’s delay claims. We hold that it does. As explained above, the language of the release is unambiguous—Bell released the government from “any and all” liability, which plainly includes the government’s liability for delays. On remand, the Court of Federal Claims must determine which delays, if any, are attributable to modifications that do not include the release language identified in paragraph 8 of Mod 93.
As a result, we must also vacate the trial court’s award of 10% profits on the delay and cumulative impact claims. Once the court determines which specific delays or cumulative impacts are not “attributable to” modifications containing the release language, the court is free to award appropriate profits on those amounts.
C. Other Arguments
The government raises challenges to other aspects of the trial court’s decision, including the court’s methodology for calculating delays and damages, the court’s award to Bell for the balance of the contract price and the fifty-eight EWOs not incorporated into any modification, the court’s award to subcontractor Stromberg Metal, and the court’s decision to deny the government any liquidated damages. As to these arguments, we affirm the decisions of the Court of Federal Claims. We discern no clear error in the court’s judgment as to the type of damages to be awarded, their appropriateness, or the rates used to calculate them. Nor did the court abuse its discretion in adopting Bell’s expert’s methodology in determining the amount of delay or the damages due to *1343 Bell. The same is true for the court’s decision-making process with regard to Stromberg Metal. Further, the court’s decisions to award Bell the amount due under the contract and for the fifty-eight “disputed” EWOs are not clearly erroneous. Finally, the court’s decision to deny the government’s liquidated damages claim is appropriate given the court’s finding that NIH asserted the claim “only upon the advice of counsel to create negotiating leverage in the event Bell filed a claim against NIH,” and was in fact responsible for many of the delays. Bell BCI, 81 FecLCl. at 640.
CONCLUSION
For the reasons set forth above, we affirm-in-part, vacate-in-part, and remand to the Court of Federal Claims for proceedings consistent with this opinion.

AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED

COSTS
Each party shall bear its own costs.

. We leave it to the Court of Federal Claims on remand to determine whether the government provided adequate consideration for other modifications containing the release language discussed herein.