# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Hallmark-Phoenix 3, LLC ) ASBCA No. 61049
)
Under Contract No. W9124J-08-C-0026 )

APPEARANCES FOR THE APPELLANT: Bryant S. Banes, Esq.
Sean D. Forbes, Esq.
  Neel, Hooper & Banes, P.C.
  Houston, TX

APPEARANCES FOR THE GOVERNMENT: Raymond M. Saunders, Esq.
  Army Chief Trial Attorney
ChristinaLynn E. McCoy, Esq.
  Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE PAGE

Appellant seeks to recover $63,013.98 for increased wages and fringe benefit costs associated with the United States Department of Labor (USDOL) requirement that it pay its employees in accordance with wage determination (WD) 2005-2049, Revision 16 (Rev. 16) during the eight-month and three-day extension period of its contract with the government. This amount is the difference in costs between WD 2005-2049, Revision 8 (Rev. 8), which was the applicable wage determination at the time of contract award and Rev. 16, the wage determination applicable during this portion of contract performance, to which the government was obligated to adjust the contract, but did not. The parties have elected to proceed pursuant to Board Rule 12.2.[1] We sustain the appeal.

## FINDINGS OF FACT

*The Contract*

1. On 29 September 2008, the Mission and Installation Contracting Command at Fort Sam Houston, Texas (MICC-FSH) and Hallmark-Phoenix 3, LLC (appellant, HP3, or the contractor) entered into Contract No. W9124J-08-C-0026 for logistics services operations in support of the United States Army Garrison at the Presidio of Monterey in California (USAG POM) (R4, tab 1).[2] The period of performance

---

[1] A decision under Rule 12.2 shall have no value as precedent, and in the absence of
    fraud, shall be final and conclusive and may not be appealed or set aside.

[2] MICC-FSH and USAG POM are referred to collectively as the "government."

included a 90-day, phase-in period (*id.* at 24[3]), plus a nine-month base period and four 12-month option years (*id.* at 1-5). The firm-fixed-price contract contained contract line item numbers (CLINs) at unit prices for supplies/services, logistics plans and operations, transportation, and maintenance; a separate CLIN for contractor manpower reporting was at no cost to the government (*id.* at 2-18). The contractor was to be paid a total of $1,713,346 for the base year (*id.* at 1).

2. Among standard contract clauses is FAR 52.217-8, OPTION TO EXTEND SERVICES (NOV 1999), which provides:

> The Government may require continued performance of any services within the limits and at the rates specified in the contract. *These rates may be adjusted only as a result of revisions to prevailing labor rates provided by the Secretary of Labor.* The option provision may be exercised more than once, but the total extension of performance hereunder shall not exceed 6 months. The Contracting Officer [CO] may exercise the option by written notice to the Contractor within 15 calendar days before the contract expires.

(R4, tab 1 at 114) (Emphasis added)

3. Among standard contract clauses incorporated by reference was FAR 52.233-1, DISPUTES (JUL 2002) – ALTERNATE I (DEC 1991) (R4, tab 1 at 111). Also incorporated by reference is FAR 52.222-41, SERVICE CONTRACT ACT OF 1965 (NOV 2007). It provides, in pertinent part:

> (c) *Compensation.* (1) *Each service employee employed in the performance of this contract by the Contractor or any subcontractor be paid not less than the minimum monetary wages and shall be furnished fringe benefits in accordance with the wages and fringe benefits determined by the Secretary of Labor, or authorized representative, as specified in any wage determination attached to this contract.*
>
> ....

---

[3] Where applicable, we adopt pagination added by the parties to Rule 4 file documents.

> (d) *Obligation to Furnish Fringe Benefits*. The Contractor or subcontractor may discharge the obligation to furnish fringe benefits specified in the attachment or determined under subparagraph (c)(2) of this clause by furnishing equivalent combinations of bona fide fringe benefits, or by making equivalent or differential cash payments, only in accordance with Subpart D of 29 CFR Part 4.

(*Id.*) (Emphasis added)

4. The contract also included USDOL Wage Determination No. 2005-2049, Revision 8 (Rev. 8) dated 24 June 2008 (R4, tab 1 at 123). This was a later WD than that contained in the solicitation upon which HP3 bid the contract (tr. 2/160). Under Rev. 8, the monthly contract price as awarded was $167,962 (tr. 1/114-15; app. supp. R4, tab 11). Although the contractor provided timely notice of several changed WDs during the course of performance, the government incorporated only Rev. 16 into the contract by unilateral Modification No. P00038 dated 16 November 2013. The government never changed the contract price to reflect the increased wages and associated costs imposed on the contractor. (Tr. 1/114-21, 2/160; R4, tabs 1, 38)

5. Also incorporated by reference is FAR 52.222-43, FAIR LABOR STANDARDS ACT AND SERVICE CONTRACT ACT – PRICE ADJUSTMENT (MULTIPLE YEAR AND OPTION CONTRACTS) (NOV 2006), which provided in pertinent part:

> (d) *The contract price or contract unit price labor rates will be adjusted to reflect the Contractor's actual increase or decrease in applicable wages and fringe benefits to the extent that the increase is made to comply with or the decrease is voluntarily made by the Contractor as a result of:*
>
> (1) *The Department of Labor wage determination applicable on the anniversary date of the multiple year contract, or at the beginning of the renewal option period....*
>
> (2) *An increased or decreased wage determination otherwise applied to the contract by operation of law;...*
>
> ....

3

(e) Any adjustment will be limited to increases or decreases in wages and fringe benefits as described in paragraph (d) of this clause, and the accompanying increases or decreases in social security and unemployment taxes and workers' compensation insurance, but shall not otherwise include any amount for general and administrative costs, overhead, or profit.

....

(f) *The Contractor shall notify the [CO] of any increase claimed under this clause within 30 days after receiving a new wage determination* unless this notification period is extended in writing by the [CO]. The Contractor shall promptly notify the [CO] of any decrease under this clause.... The notice shall contain a statement of the amount claimed and any relevant supporting data including payroll records, that the [CO] may reasonably require. Upon agreement of the parties, the contract price or contract unit price labor rates shall be modified in writing. The Contractor shall continue performance pending agreement on or determination of any such adjustment and its effective date.

(g) The [CO] or an authorized representative shall have access to and the right to examine any directly pertinent books, documents, papers and records of the Contractor until the expiration of 3 years after final payment under the contract.

(R4, tab 1 at 111)

6. HP3 and Data Monitor Systems, Inc., (DMS) entered into a subcontract that was effective 29 October 2008 for the purpose of performing the instant contract (app. supp. R4, tab 12 at 734-35). Paragraph 24 of the subcontract, "INVOICING AND PAYMENT" required appellant to pay DMS's invoices "within fifteen (15) calendar days of receipt or within fifteen (15) business days after receipt of the Government's payment covering the amounts submitted by HP3, which ever is later." Paragraph 28 "DISPUTES" described the process to be followed by the parties in the event of a dispute and the manner in which HP3 would sponsor a pass-through claim to the government on behalf of DMS (*id.* at 740-42).

4

*The Parties' Settlement Agreement from HP3's Appeal to the United States Court of Federal Claims*

7. In December 2012, the parties entered into a settlement agreement to resolve HP3's appeal in the amount of $1,285,475.99 before the United States Court of Federal Claims. Although the matter was originally heard on a deemed denial basis, the CO issued a final decision (COFD) that granted the portion of HP3's claim relating to parts reimbursement. The COFD denied the contractor's demand to recover for excess workload and additional costs associated with revised wage rate determinations. Under the settlement of the remaining issues, the government paid HP3 a total of $733,138.53. (App. supp. R4, tab 12 at 8-12)

8. Paragraph 8 of the settlement agreement provides in relevant part:

> For Option Year 04, which is ongoing, HP3 releases, waives, and abandons any claims for excess workload and for wage determination, including but not limited to any claims for costs, interest, expenses, attorney fees, and damages of any sort with respect to such claims for excess workload and wage determination. Furthermore, HP3 does not hereby release, abandon, or otherwise waive any other claims that may arise out of its performance of the contract during Option Year 04, with the exception of any claims for excess workload and wage determination, as herein described.

(R4, tab 12 at 9-10)

9. Paragraph 12 defines the scope of the settlement agreement:

> *This agreement is for the purpose of settling this case, and for no other.* Accordingly, this agreement shall not bind the parties, nor shall it be cited or otherwise referred to, in any proceedings, whether judicial or administrative in nature, in which the parties or counsel for the parties have or may acquire an interest, except as is necessary to effect the terms of this agreement.

(R4, tab 12 at 10-11) (Emphasis added)

*The Contract Extension Period*

10. On 25 October 2013, following Option Year 4 (OY4), the government unilaterally extended the contract in accordance with FAR 52.217-8 from 29 October 2013 through 28 December 2013 (R4, tab 37). The government added and incrementally funded new 5000-series CLINs (R4, tabs 37, 40-41, 43).

11. Subcontractor DMS on 19 November 2013 advised HP3 that its cost of the "Extension Increase" using Rev. 16 was $178.33 per month" (app. supp. R4, tab 12 at 101-05).

12. The CO on 16 November 2013 incorporated Rev. 16, dated 19 June 2013 into the contract extension. Rev. 16 called for a $ .10 health and welfare adjustment, and no increase or decrease in prevailing wage rates, over WD 2005-2049, Revision 15 (Rev. 15). (R4, tab 38) There was no evidence that the government incorporated wage determination revisions 9 through 15 into the contract or that it accordingly adjusted the contract price as called for by FAR 52.222-43(d) (R4, tab 1, *passim*; *see also* R4, tab 49 at 13-14).

13. Bilateral contract Modification No. P00035 dated 28 April 2014 extended the performance period through 28 August 2014, and adjusted the price by $671,848 for this four-month extension period (R4, tab 44). The modification acknowledged that Rev. 16 remained in effect and that the "**[i]ncorporation of Wage Adjustment in accordance with the wage determination is forthcoming**" (*id.* at 2).

*The Contractor's Requests for Compensation and the Government's Response*

14. Appellant on 22 September 2014 wrote the CO seeking a "cost increase for the subject contract" that was certified as required by the Contract Disputes Act of 1978 (CDA), 41 U.S.C. § 7103(b)(1). In relevant part, HP3 said that this claim "includes our previous WD requests which have not yet been incorporated into the contract but were paid for OY1-OY4 (not the extension) in the certified contract claim settlement dated 13 Dec 2012." As excerpted in relevant part, HP3 summarized its additional costs associated with Rev. 16:

|  | New Monthly Price | Original Monthly Amount | Increase | # Months 8 | # days 3 | Total Adjustment per CLIN |
|---|---|---|---|---|---|---|
| 5001 | $6,442.19 | $6,430.00 | $12.19 | $97.52 | $0.40 | $97.92 |
| 5002 | $73,101.33 | $70,859.00 | $2,242.33 | $17,938.64 | $73.72 | $18,012.36 |
| 5003 | $63,623.54 | $58,610.00 | $5,013.54 | $40,108.32 | $164.83 | $40,273.15 |
| 5004 | $32,574.89 | $32,063.00 | $511.89 | $4,095.12 | $16.83 | $4,111.95 |
|  |  |  | Total Request for Equitable Adjustment |  |  | **$62,495.38** |

6

(R4, tab 49 at 1, 6) This amount was increased to $63,013.98 by appellant's 25 July 2016 correspondence (R4, tab 118).

15. The CO on 27 October 2014 informed HP3 that the government was processing its claim. "However, per legal review, we have been advised that, in accordance with the contract claim settlement agreement dated 13 December 2012, paragraph 8, you are not entitled to any claims for excess workload and wage determination for OY4 and extension." The government said it would consult with "the contract trial attorney for further clarification of the settlement" and would keep the contractor informed. (R4, tab 50)

16. Thus began a period of about a year and a half in which the parties exchanged correspondence regarding HP3's request (*see, e.g.,* R4, tabs 58-60). A pattern emerged, in which HP3 provided information requested by various government personnel evaluating the request, a period of delay would ensue, the contractor would inquire regarding the status of its demand, and the government would either offer assurances that the matter would be addressed or asked for information that HP3 contended it had already provided (*see, e.g.,* R4, tabs 60, 62, 66, 68-69, 72, 74, 76, 79, 83, 86-87, 89, 93). On 12 August 2015, appellant wrote the CO concerning the government's lack of response. It reminded her that the government's letter of 27 October 2014 "allege[d] that HP3's claim is barred by waiver in the settlement agreement and [that she] assumed the responsibility of conferring with [counsel] on this matter." HP3 advised that as it had not heard from the CO or its counsel, it would "consider this a deemed denial and move to litigation if this matter is not resolved by August 31, 2015." HP3 denied that paragraph 8 of the settlement "bar[red] this claim [and there] was certainly no waiver that covered any extension beyond OY4." (R4, tab 60)

17. Following further exchanges between the parties, the government on 12 May 2016 asked HP3 to provide one month of payroll data (R4, tab 99). The contractor responded with this information on 13 May 2016, and noted that it had provided this on 23 November 2015 (R4, tab 100). Appellant asked again for updates on 8 and 21 June 2016, and was told that the matter was pending and that the government would ask for more information (R4, tabs 103-05). HP3 expressed disappointment with the additional delay on 22 June 2016, and the government said that it anticipated a decision by 29 July 2016 (R4, tabs 105-06). Further correspondence ensued regarding the status of funding and how the matter would be processed (R4, tabs 107-08).

18. HP3 on 25 July 2016 submitted a second certified request for a cost increase for the eight-month, three-day period of 29 October 2013 – 2 July 2014. Attached was a "Claim Summary Sheet"; the "HP Claim"; and its subcontractor "DMS Claim." The contractor sought an "Extension Increase" of "$178.33 per month" and a total of $63,013.98. (R4, tab 117) Again, the government continued to ask for additional

information and the contractor responded (R4, tabs 118-21). On 30 August, 26 September, and 7 December 2016, HP3 again asked for a timeline from the government (R4, tabs 122-24). The CO replied on 7 December 2016 that "[t]he Wage Adjustment ha[s] not been denied" and that she would work on providing HP3 with a "projected dead line [sic] with a decision and way forward" (R4, tab 125). Appellant on 3 January 2017 again asked the CO for a "timeline for the Government's resolution of this claim" (app. supp. R4, tab 10). HP3 on 6 February 2017 appealed to the Board on the basis of a "deemed denial" by the CO.

*The Parties' Stipulations Regarding Appellant's Financial Records*

19. Ms. Pamela Barber was the former vice president for finance and accounting for HP3. The parties stipulated that Ms. Barber "used contemporaneous time records to input labor hours and other data related to the WD adjustment and to HP3's accounting system; that these records were signed...by the employee and on-site manager, and she relied on these contemporaneous records for what was placed in the accounting system of HP3." Ms. Barber "can also confirm that the...labor payments and health-and-welfare payments to the [employee stock option plan] and health insurance reflected in HP3's accounting system were actually made." She would have testified that "the time sheets [were] in a file cabinet and [she] left them there when she left [HP3] in 2014. That office has since been closed, and that's why it's so hard to find them." Further, "despite a diligent search, Mr. Freeman [president of HP3] is not able to find the underlying time sheets, although there remains a dispute about whether those duplicate records need to be maintained." Finally, the parties stipulated that Mr. Sook of DMS "will say that he has not been paid for the last two months of the extension period, two months and three days of the extension period....[and] that there is nothing owed to him prior to that" but that he "paid all his employees in accordance with the wage determinations and that he adjusted the wages for the extension period in accordance with Rev. 16." (Tr. 1/100-03) We accept appellant's explanation that it was unable to locate original payrolls records and that they were lost during a move; HP3's assertion that the accounting records on which it relies reflect contemporaneous labor and fringe benefit costs, and that it made the necessary corrections for minor posting errors; and that DMS paid its employees in accordance with Rev. 16 for the extension period but has not been paid by HP3.

DECISION

*Entitlement*

The contractor's entitlement hinges upon two obligations that are clearly stated in the contract. The first is the contractor's duty under FAR 52.222-41, SERVICE CONTRACT ACT OF 1965 (NOV 2007), to compensate its workers, and provide fringe benefits, in accordance with the minimums stated in the then-applicable USDOL wage determination, here Rev. 16. We find that, during the extension period, HP3 and DMS

paid their employees and furnished fringe benefits using Rev. 16 in compliance with FAR 52.222-41. (Findings 3-4, 6, 19)

The second obligation is that of the government to adjust the contract price as required by FAR 52.222-43, FAIR LABOR STANDARDS ACT AND SERVICE CONTRACT ACT – PRICE ADJUSTMENT (MULTIPLE YEAR AND OPTION CONTRACTS) (NOV 2006). Paragraph (d) of this provision states that the "contract price or contract unit price labor rates will be adjusted to reflect the Contractor's actual increase or decrease in applicable wages and fringe benefits to the extent that" the change is made as a result of the USDOL applicable wage determination. Paragraph (f) requires the contractor to timely notify the government of such a change, which HP3 did. (Findings 4-5)

The record shows that although HP3 complied with paragraph (f), the CO never amended the parties' original contract, which incorporated Rev. 8, to reflect successive WD revisions. The government does not explain this lapse, as it was obligated to make this change but did not do so. By the time of the extension period at issue, USDOL required compliance with Rev. 16, which was more costly to the contractor than Rev. 8. (Findings 4, 5, 12-13) We find that the government failed to fulfill this obligation, and that appellant is entitled to recover the price increase occasioned by Rev. 16 over Rev. 8. The change in the applicable wage determination, and the appropriate change in contract price, were to be "applied to the contract as a matter of law" (FAR 52.222-43(d)); this is specifically authorized for contract extensions by FAR 52.217-8.

*Affirmative Defenses Asserted by the Government*

The government's opposition to HP3's entitlement to increased costs rests upon two late-raised affirmative defenses, to which appellant objected. These are that "HP3'S DECEMBER 2012 SETTLEMENT RELEASE PRECLUDES ADJUSTMENTS TO WAGE RATES UNDER WD 2005-2049, REV. 16," and that "HP3'S [SIC] IS BARRED UNDER ACCORD AND SATISFACTION TO ANY ADJUSTMENT FOR THE FINAL TWO MONTHS AND THREE DAY EXTENSION" (gov't br. at 21-24). The Board provisionally allowed testimony at hearing but cautioned the government that it must justify its untimely assertions. The government responded that these defenses should be allowed, as "HP3 was on notice of the [government's] available defenses, and was not prejudiced" (gov't reply br. at 5).

We sustain appellant's objections. FED. R. CIV. P. 8(c)(1) requires a party responding to a pleading to "affirmatively state any available or affirmative defenses," which include accord and satisfaction and release.[4] This rule requires timely notice to

---

[4] The FED. R. CIV. P. are not directly applicable to the Board, but we consider these for guidance when the Board's Rules do not directly speak to the issues. We

the opposing party, and the government offered no excuse for failing to do so. Even if the Board allowed the government to pursue these defenses, these would fail for want of proof. We find that the December 2012 settlement agreement did not bar the instant appeal for wage-related increased costs for the extension period nor did it modify the terms of the contract (R4, tab 12 at 8-10).

The government produced no evidence that appellant intended to release its right to recoup the cost of increased wage requirements for the extended period. *See, e.g., Optex Systems, Inc.*, ASBCA No. 58220, 14-1 BCA ¶ 35,801 at 175,097. Nor did the government prove there was accord and satisfaction simply "because [HP3] is a signatory to bilateral Modification P00035" which applied Rev. 16, which had "only a $.10 [health and welfare] adjustment, and not prevailing wage increases." In particular, the government has not proven the essential element that there was a meeting of the minds that this modification was intended as accord and satisfaction for costs incurred during the contested extension period. *See, e.g., Bell BCI Co. v. United States*, 570 F.3d 1337, 1341 (Fed. Cir. 2009) (quoting *O'Connor v. United States*, 308 F.3d 1233, 1240 (Fed. Cir. 2002)). Notably, the government adduced no testimony from the CO or any competent government representative to support this contention.

*Quantum*

Appellant seeks to recover $63,013.98. We reject the government's contention that HP3 is entitled, at most, to the increased cost of complying with Rev. 16 over Rev. 15, which was used during OY4 as a result of the settlement agreement (*see, e.g.,* gov't br. at 21-22; gov't reply br. at 2). The government overlooks the fact that the contract price was never adjusted to incorporate the increased costs of compliance with Rev. 15. We hold that the starting point to calculate the cost impact of Rev. 16 was Rev. 8, which was the only prior wage rate specified in the contract.

The government also criticizes appellant for failing to produce original payroll records to substantiate its claim, which it asserts were lost during a move (finding 20). While these would be the best proof of the contract's increased expenses, we deem the records produced in support of its claim to be adequate. We accept HP3's assertion, which the government did not successfully rebut, that it corrected the relatively minor errors it made with respect to incorrectly paid workers and in its accounting entries and that the currently-requested amount is correct (app. reply br. at 5). We reject the government's contention that HP3 is not entitled to the amounts due to its subcontractor DMS. Appellant successfully demonstrated that its agreement with DMS provided for HP3 to pay the subcontractor after it received payment from the government. (Findings 6, 19)

---

regard FED. R. CIV. P. 8(c)(1) as appropriate here as a matter of fundamental fairness, particularly in this expedited Rule 12.2 appeal.

## CONCLUSION

We sustain appellant's appeal, and hold that the contractor is entitled to recover the $63,013.98 it seeks plus interest pursuant to the CDA, 41 U.S.C. § 7109, from the date of its 22 September 2014 claim.

Dated: 23 June 2017

REBA PAGE
Administrative Judge
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61049, Appeal of Hallmark-Phoenix 3, LLC, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

11