ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of - | ) |
| | ) |
| JE Sinn Consulting, LLC | ) ASBCA Nos. 63353, 63383 |
| | ) |
| Under Contract No. FA3016-20-C-0102 | ) |

APPEARANCE FOR THE APPELLANT:    Mr. Joel E. Sinn
    President


APPEARANCES FOR THE GOVERNMENT:  Caryl A. Potter III, Esq.
  Air Force Deputy Chief Trial Attorney
  Michael J. Farr, Esq.
  Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE WOODROW

Appellant, JE Sinn Consulting, LLC (JE Sinn or appellant), elected to pursue these appeals under the Board's Rule 12.2, Small Claims (Expedited) procedure. Accordingly, this decision shall have no precedential value, and in the absence of fraud shall be final and conclusive and may not be appealed or set aside. *See* 41 U.S.C. § 7106(b)(4)-(5). Mr. Joel Sinn, President of JE Sinn, is representing appellant *pro se*.

On September 18, 2020, the Air Force awarded Contract No. FA3016-20-C-0102 to JE Sinn in the total amount of $291,688 (R4, tab 6 at 1-2). The contract was a firm-fixed-price (FFP) design-build construction contract for the replacement of a culvert bridge on Cowgill Road at Joint Base San Antonio (JBSA)-Camp Bullis, Texas (*id*. at 1, 4, 34). The contract included Contract Line Item Number (CLIN) 0001 for the design work, which required submission of 65%, 95%, and 100% design packages, and CLIN 0002 for the construction work with an overall performance period of 222 days (R4, tab 6 at 1, 4).

The Air Force issued the Notice to Proceed (NTP) for the design work on September 28, 2020, with a scheduled completion date of February 8, 2021 (R4, tab 7). On January 26, 2021, the parties executed a bilateral modification (Modification No. P0001) to extend the design period to April 1, 2021. This modification included a standard release of any monetary claims associated with the facts and circumstances of the modification. (R4, tab 8 at 2) The pertinent language releases "all liabilities, obligations, claims, and demands whatsoever under or arising from the said contract for further equitable adjustments attributed to such facts or

circumstances giving rise to this modification.  This release of claims for this modification is agreed to be full and complete without any exceptions."  The extension of the design period was necessary due to delays in processing base passes for appellant's personnel and for the Air Force's review of the appellant's design submittals (tr. 29-34).  JE Sinn submitted the final 100% design package on March 26, 2021, and the Air Force approved the final design on April 7, 2021 (R4, tab 50 at 5).

On April 28, 2021, the parties bilaterally modified (Modification No. P00002) the contract to address the discovery of lead-based paint on the bridge structure, adding an additional amount of $5,999.41 for lead paint abatement work.  This amount included only JE Sinn's direct costs, but not extended overhead (tr. 43).  The modification included a standard release of any additional monetary claims associated with the facts and circumstances of the modification.  The release language is virtually identical to the release in Modification No. P00001 (R4, tab 9 at 4).  On June 24, 2021, the Navy issued a NTP for the construction work (including lead-based paint abatement) and subsequently issued unilateral modification (Modification No. P00003) to establish the contract completion date of October 12, 2021 (R4, tabs 12 at 2, 13).

On August 26, 2021, JE Sinn poured the concrete for the bridge deck.  The last concrete truck arrived three hours late.  (R4, tabs 14 at 2, 44 at 3)  During the delay, part of the unfilled area concrete started to set, creating a "cold joint" in what was intended to be a monolithic concrete structure (R4, tab 44 at 3-4; tr. 45-46).  As a result, JE Sinn's Designer of Record (DOR), Munoz Engineering, recommended that tensile strength tests be performed on the bridge deck concrete (R4, tabs 16 at 4, 18).  On September 23, 2021, JE Sinn notified the Air Force that the tensile strength test failed, and, on October 4, 2021, the DOR recommended removing and replacing the concrete placed after the three-hour delay in pouring (R4, tab 21 at 2, 9).  On October 6, 2021, the Air Force civil engineer office provided comments regarding the DOR's recommended course of action, including stating the need to include an additional tensile strength test, including citing the applicable American Society for Testing and Materials (ASTM) number, the PSI or MPa rating needed for a passing test result, and the timing of the test, *i.e.*, how many days after the concrete pour (R4, tab 22 at 3).  That same day, the Air Force civil engineer office held a conference call with the DOR and JE Sinn, during which the Air Force agreed with the proposed repair, but requested that a new tensile strength test be accomplished as a means to inspect whether the repair was successful (R4, tab 44 at 4; tr. 49, 124-25).  JE Sinn's DOR, however, stated that a second tensile strength was unnecessary (tr. 50-51, 55), and, at that time, the CO did not expressly direct JE Sinn to perform the second tensile strength test (tr. 55-56).

On October 13, 2021, a heavy storm passed through the San Antonio area, causing the dry creek bed under the project bridge to overflow the top of the bridge

deck and the road on either side of the bridge (R4, tab 25 at 2). The high water washed away a significant amount of road and shoulder base material and dislodged the bracing holding the bridge forms for the concrete railing (*id.*). According to JE Sinn, repairing the damage required it to remove all of the loose rocks from the new road base, scarify the remaining base, add and compact new base material, and then repair 300 feet of shoulders (R4, tabs 24 at 6-10, 25 at 8; tr. 62-63).

On October 13, 2021, JE Sinn advised the Air Force that the DOR did not specify a requirement for another tensile strength test as part of the remedial work, that the method used in the repairs is standard for this type of repair, and that a tensile strength test is not listed as a requirement following such repairs (R4, tab 44 at 4; tr. 50-51, 54-55). On November 15, 2021, JE Sinn notified the government that it had completed the concrete repairs and asked for a final inspection, stating that it was not necessary to retest the tensile strength of the repaired bridge deck because the DOR had been present throughout the repairs. If the Air Force insisted upon retesting, JE Sinn said it would seek reimbursement for the costs of the retest. (R4, tabs 39 at 9-10, 44 at 4)

On December 2, 2021, the Air Force conducted the final inspection (R4, tab 44 at 4). When the Air Force civil engineering project manager, Mr. Dwight Wellons, asked appellant for the results of the second tensile strength test and stated that without such results, the Air Force could not accept the project, appellant again asserted that since the DOR did not require the test as part of the proposed remedial work, the test was neither necessary nor required. (*id*. at 4-5; tr. 55-56).

On January 12, 2022, the CO directed JE Sinn to perform a second tensile strength test on the repaired concrete (R4, tab 39 at 1). JE Sinn performed the test and provided the Air Force with the test results on January 20, 2022, which showed that the repairs and rework performed were successful. (R4, tab 42 at 5-8). Subsequently, on January 13, 2022, the CO issued appellant a final acceptance letter (R4, tab 41).

*Requests for Equitable Adjustment*

On September 14, 2021, appellant submitted its first request for equitable adjustment (REA) for additional compensation and a nine-day time extension due to heavy rainfalls that allegedly delayed the project for seven days, plus a weekend, and resulted in additional expenses to pump water out of the creek bed and lost time on the contract work (R4, tab 17 at 2). The first REA also sought additional compensation for increases in the price of reinforcing steel needed for the project allegedly due to inflation caused by COVID-19 and fabrication plant shutdowns (*id.*). The total amount of the first REA was $13,876.60 (R4, tab 26 at 1).

3

On October 29, 2021, JE Sinn submitted a second REA for $24,144.78 to repair damage to the project work caused by the October 13, 2021 storm (R4, tab 25 at 2, 10). On November 4, 2021, JE Sinn decided to proceed with the storm damage repairs, pending approval of the second REA (R4, tab 40 at 2).

On November 18, 2021, the CO rejected the first REA on the grounds that the contractor bears the risk of increased costs in a firm fixed-price contract. The CO also concluded that JE Sinn had not demonstrated how the increased costs were the fault of the government. (R4, tab 26 at 2) On November 29, 2021, the CO denied the second REA in its entirety, on the basis that JE Sinn's firm fixed-price contract places the risk of increased costs on the contractor and that JE Sinn failed to demonstrate entitlement to an equitable adjustment (R4, tab 31 at 4).

On January 20, 2022, JE Sinn submitted a third REA for the costs associated with the second tensile strength test (R4, tab 43). On February 7, 2022, the contracting officer rejected appellant's third REA, stating that retesting the tensile strength of the concrete bridge deck was necessary to ensure that the repaired work was satisfactory and that the second test would not have been required if the work had been performed satisfactorily the first time (R4, tab 44 at 6).

DECISION

The proximate causes of JE Sinn's additional costs were the late arrival of the concrete truck during the construction of the bridge deck and the October 13, 2021 storm. JE Sinn admits that it was responsible for the late delivery of the concrete truck (app. br. at 1; tr. 85-86). Although JE Sinn contends that government delays in issuing base passes and reviewing JE Sinn's design submissions pushed the project schedule into the period of the October storm (tr. 87, 100), JE Sinn has not met its burden of demonstrating that these delays were the government's fault or that the government should bear responsibility for a storm, which is an "act of God." Moreover, even with these delays, we find that JE Sinn would have completed the construction work on the bridge deck by October 12, 2021, one day prior to when the severe storm struck (tr. 85). Both the notice to proceed and Modification No. P00003 established October 12, 2021 as the project completion date. Although JE Sinn contends that the government's refusal to let it pave the asphalt road on either side of the bridge caused most of the storm damage (tr. 102-21), the record demonstrates that JE Sinn elected to delay the asphalt paving while performing the concrete repairs (R4, tab 21 at 2; tr. 129).

We also conclude that JE Sinn is not entitled to any additional compensation, such as extended overhead, for the delays that were the subject of bilateral Modification Nos. P00001 and P00002 (app. br. at 3). Modification No. P00001 addressed delays in processing base passes and in design review, while Modification

4

No. P00002 included delays for addressing the presence of lead paint. Both bilateral modifications contained a standard release of claims from all liabilities arising from the contract attributed to the facts or circumstances giving rise to the modification. *Bell BCI Co. v. United States*, 570 F.3d 1337, 1341-42 (Fed. Cir. 2009) (enforcing release of liability in bilateral contract modification).

JE Sinn further argues that the government delays forced it to order steel when the price had increased due to the pandemic (app. resp. at 5). However, pursuant to Federal Acquisition Regulation (FAR) 16.202-1, appellant's firm fixed-price contract is not subject to any adjustment based the contractor's cost experience in performing the contract. A "firm-fixed-price contract provides for a price that is not subject to any adjustment on the basis of the contractor's cost experience in performing the contract." FAR 16.202-1; *see Safaa Al-Rawaby Co.*, ASBCA No. 63146, 23-1 BCA ¶ 38,314 at 186,050 (citing *Lakeshore Eng'g Servs., Inc. v. United States*, 748 F.3d 1341, 1347 (Fed. Cir. 2014) ("The essence of a firm fixed-price contract is that the contractor, not the government, assumes the risk of unexpected costs.")). Therefore, we conclude that JE Sinn is not entitled to costs associated with increases of the price of reinforced steel sought in its first REA.

JE Sinn further contends that the government deliberately waited until all the storm damage repairs were complete before denying JE Sinn's first REA (app. resp. at 3). JE Sinn has produced no evidence that the government intentionally delayed its response to the REAs. Indeed, the CO issued the Air Force's written response to the first REA within two months of receipt (September 2021 to November 2021). Moreover, JE Sinn unilaterally elected to go forward with repairing the storm damage, even though the government had not yet responded to the REA (app. resp. at 2).

With respect to the costs associated with the second tensile strength test, we hold that the Air Force put JE Sinn on notice of the need to conduct a second tensile strength test when it commented on the DOR's recommendation (tr. 124-25; R4, tab 22 at 3). We also hold that such a test was reasonable and necessary to ensure the integrity of the bridge deck (tr. 126-27). The fact that the Air Force signed the final inspection without noting any deficiencies is not dispositive, because final inspection is not equivalent to final acceptance (tr. 88-91). FAR 52.246-12, INSPECTION OF CONSTRUCTION (AUG 1996), which is expressly incorporated into Section E of the contract (R4, tab 6 at 7), provides that "[g]overnment inspections and tests are for the sole benefit of the Government and do not . . .[c]onstitute or imply acceptance." FAR 52.246-12(c)(3). FAR 52.246-12(e) further states that "[t]he Government may charge to the Contractor any additional cost of inspection or test when work is not ready at the time specified by the Contractor for inspection or test, or when prior rejection makes reinspection or retest necessary."

Therefore, we conclude that JE Sinn is not entitled to compensation for the cost of the second tensile strength test.

CONCLUSION

For these reasons, these appeals are denied.

Dated: May 5, 2023

KENNETH D. WOODROW
Administrative Judge
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 63353, 63383, Appeals of JE Sinn Consulting, LLC, rendered in conformance with the Board's Charter.

Dated: May 5, 2023

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

6