ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| HECO Pacific Manufacturing, Inc. | ) ASBCA No. 63217 |
| | ) |
| Under Contract No. N62470-13-D-4018 | ) |

APPEARANCE FOR THE APPELLANT:     Casey J. McKinnon, Esq.
                                  Cohen Seglias Pallas Greenhall & Furman PC
                                  Washington, DC

APPEARANCES FOR THE GOVERNMENT:   Allison M. McDade, Esq.
                                  Navy Chief Trial Attorney
                                  David M. Ruddy, Esq.
                                  Ryan C. Kujawski, Esq.
                                  Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE MELNICK
DENYING THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

        HECO Pacific Manufacturing, Inc. (HECO) contracted with the government to provide new cranes.  It alleges that government delays pushed its performance into the period of the COVID-19 pandemic, subjecting HECO to COVID mitigation requirements that caused it to incur extra costs.  The government moves for summary judgment.  For the reasons given below we deny the motion.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

        1.  In 2016, the government issued a fixed price delivery order under an existing contract to HECO for three new cranes at Naval Base Kitsap, Bangor, Washington (R4, tab 1 at 10, tab 7 at 47, tab 12).  On March 21, 2019, about a month prior to the April 19 extended delivery date, the government expressed concerns by letter respecting the painting of the cranes.  Work was then suspended.  (Gov't. mot., ex. C at 1-2; government statement of undisputed material facts (gov't statement) ¶¶ 16, 21; statement of genuine issues (app. statement) ¶ 9)[1]  About eight months later, on November 17, 2019, HECO submitted a Request for Equitable Adjustment (REA) seeking $506,997.75 for delays and impacts resulting from the dispute about painting and the government's prevention of completion.  It recited a plan of action for completion once a modification

--------

[1] The government concedes HECO's statement for purposes of the motion (gov't reply at 2).

1

was issued.  (Gov't mot., ex. D at 1-4)  HECO responded to government questions and revised the REA on December 23, 2019 (gov't mot., ex. E at 1-5).

2.  On March 13, 2020, COVID-19 was declared a national emergency (gov't. mot., ex. F).  The record does not reveal anything more happening until six months later when on September 3, 2020, HECO sent another REA to the government complaining about continuing delays arising from the paint issue, proposing the same plan of action as before, and seeking $559,589.35.  This new REA clearly stated that "[t]he costing does not include any Covid related costs."  (R4, tab 26 at 240)  Two weeks later, on September 17, the parties completed Modification No. 07 to the delivery order, settling the November 17, 2019, REA and "revised REA dated 27 December 2019."[2]  The modification "incorporate[d] the scope of work and corrective actions" of HECO's September 3, 2020, REA, increased the contract price by the amount sought in that letter, $559,589.35, and extended the period of performance to April 30, 2021.  It stated that "[a]cceptance of this modification by the contractor constitutes an accord and satisfaction and represents payment in full for both time and money and for any and all costs, impact effect and for any delays and disruptions arising out of, or incidental to, the work as herein revised."  (R4, tab 22 at 192-96)

3.  Three months after Modification No. 07 was executed, on December 16, 2020, the government project manager forwarded to HECO "COVID related restrictions and requirements necessary for . . . [the] project."  They had been provided to the project manager by the "Crane Mechanical Engineer, SPB 243, Strategic Weapons Facility Pacific."  Generally, they entailed movement restrictions, trip questionnaires, COVID checklists, face covering and social distancing, and that HECO personnel were required to obtain permission to access the base.  (R4, tab 26 at 274-76)

4.  Around nine months later, on September 13, 2021, HECO submitted another REA for $322,886 for the impacts of the COVID rules that were imposed on it.  It addressed the burdens and delays generated by complying with the trip questionnaires as well as the government's delays responding to them and their frequent rejections.  HECO also complained about completing forms, time spent hand washing, as well as addressing mask requirements.  It added costs associated with losing the labor of ill employees, and increased shipping expenses it said were associated with COVID lockdowns.  (R4, tab 24 at 205)  After the government denied the REA on October 21, saying it was not liable for COVID costs, HECO sought reconsideration on November 1 (R4, tabs 25; 26 at 238).  Among other things, it argued that government delays had pushed the work into the pandemic period, subjecting HECO to changed site conditions.  It added that conditions required additional employee breaks.  HECO included the claim certification required by 41 U.S.C. § 7103(b).  (R4, tab 26 at 239)  The government treated the November 1 submission as a claim and denied it on December 9, 2021 (R4, tab 27).

---

[2] We suspect that it intended to refer to the December 23 revision (gov't mot., ex. E).

5. HECO has appealed. After generally alleging facts, the complaint maintains government delays prevented HECO from completing the work prior to the onset of COVID, subjecting it to COVID related costs.

DECISION

The government moves for summary judgment. It argues (1) the appeal is barred by the doctrines of release or accord and satisfaction, (2) that HECO cannot recover for the impact of COVID restrictions because COVID was not foreseeable when the government first delayed performance, and (3) recovery is barred by the sovereign acts doctrine. We reject the first two theories and rule the government has not established the third.

I.        Release/Accord & Satisfaction

The effect of a modification is often analyzed under both the doctrines of accord and satisfaction and release. *See Haskell Co.*, ASBCA No. 63291, 24-1 BCA ¶ 38,537 at 187,332. "A release is a contractual defense where a party abandons a claim or relinquishes a right that could be asserted against another." *Id.* It is interpreted like any other contract. We review its plain language. If clear and unambiguous it is given its plain and ordinary meaning. *Bell BCI Co. v. United States*, 570 F.3d 1337, 1341 (Fed. Cir. 2009). An accord and satisfaction occurs "when some performance different from that which was claimed as due . . . is accepted by the claimant as full satisfaction of his claim." *Id.* at 1340-1341 (quoting *Cmty. Heating & Plumbing Co. v. Kelso*, 987 F.2d 1575, 1581 (Fed. Cir. 1993)). Among the elements of an accord and satisfaction is a meeting of the minds of the parties. *Id.* at 1341. That inquiry is fact specific and can entail review of a wide range of evidence. *See Meridian Eng'g Co. v. United States*, 885 F.3d 1351, 1365 (Fed. Cir. 2018).

The government says Modification No. 07 bars HECO's claim for the costs it incurred complying with COVID related requirements. Modification No. 07 says it settles HECO's November 17, 2019 REA, as revised in December, and incorporates the scope of work and corrective actions contained in HECO's September 3, 2020, REA (SOF ¶ 2). The plain language therefore designates the contents of those documents for the description of what claims are being settled. The November 17, 2019, REA concerns government delays in 2019 associated with painting issues (SOF ¶ 1). It entirely predates COVID and cannot pertain to its effects or requirements imposed because of it. The September 3, 2020, REA, whose scope of work and corrective action are incorporated by the modification, essentially asserts the same grounds for delay compensation as the prior REA. Though it was submitted months after COVID was declared a national emergency, it expressly excludes from its scope COVID related costs. (SOF ¶ 2) This appeal is for costs incurred complying with COVID requirements imposed by the government in

3

December 2020, after Modification No. 07 was executed.  We see no basis to conclude Modification No. 07 settled costs arising from requirements imposed for the first time after the modification was executed.

The government focuses on the modification's release language.  The release provides that HECO's acceptance of the modification "constitutes an accord and satisfaction and represents payment in full . . . for any and all costs, impact effect and for any delays and disruptions arising out of, or incidental to, the work as herein revised" (*id.*).  The release essentially encompasses the costs of the revised work required by the modification, meaning the work described by the September 3, 2020, REA.  Again, HECO seeks the costs of COVID work required in December 2020.  That is not the revised work required by the modification; it is additional work beyond its scope.  Considering the entirety of Modification No. 07, we decline to conclude it settles or releases any claims for costs associated with the COVID requirements imposed after the modification, and that were unrelated to its revisions to the work.  Its plain language neither releases that claim nor shows a meeting of the minds accepting an alternative performance in satisfaction of it.

II.      Foreseeability

Next, the government argues that HECO's argument that the government's delays subjected it to the COVID restrictions are not a valid basis upon which to premise its claim because COVID was not foreseeable.  HECO's contentions about this are potentially confusing and require some description.  According to HECO, it "does not claim that the . . . governmental actions related to COVID are the main driver of HECO's costs."  It says it is complaining about the government "delay[ing] HECO's completion of the project by forcing it to work during the COVID 19 pandemic, subjecting HECO to onerous base access restrictions that then unexpectedly increased HECO's overall costs." (App. opp'n at 6-7)

HECO's arguments appear to flow from its effort to avoid the fatal effects of the sovereign acts doctrine, which we address in more detail below.  At this juncture it suffices to note that if the COVID restrictions obstructing HECO's performance constitute sovereign acts by the government, then it is not directly liable for them in its contractual capacity. *See Horowitz v. United States*, 267 U.S. 458, 461 (1925).  So, instead of complaining directly about the restrictions, HECO evidently is focusing on alleged government delays that pushed its performance to the period it was subjected to the restrictions, which it claims entitles it to be compensated for them regardless of whether they might be sovereign acts.  It suggests its case is like those that recognize government responsibility for the effects of adverse weather experienced after the government delayed performance. *See Nassar Grp. Int'l*, ASBCA No. 58451 *et al.*, 19-1 BCA ¶ 37,405 at 181,833-34.  Through its motion, the government responds that under *BCI Construction USA, Inc.*, ASBCA No. 62657 *et al.*, 24-1 BCA ¶ 38,522

4

at 187,262-63, HECO's theory is dependent upon the foreseeability of COVID when the government allegedly began delaying the project, which it says HECO cannot establish.

*BCI* involved a contractor seeking COVID related increased material and labor costs alleged to arise because a government stop work order issued and cancelled in 2019 pushed the schedule into 2020's period of COVID's impact. The Board rejected the claim because COVID was not foreseeable when the order was issued. *Id.* at 187,243-44, 187,262-63. The government says the same conclusion applies here because COVID was not foreseeable when it commenced delays over paint issues in March 2019. But the government's actions causing the delay in *BCI* began and ended prior to COVID. Here, the record shows HECO complaining about continued delays in September 2020, long after the March COVID emergency declaration (SOF ¶ 2). *BCI* does not support the government's suggestion that our inquiry into the foreseeable impact of a government delay that may have started before COVID but lasted until after the effects of the emergency were known is strictly contained to what might have been anticipated on the delay's first day. We cannot conceive of a reason why the government should be categorically absolved from responsibility for the potential consequences of a delay that it continued into a period when COVID's effects would have become foreseeable to it.

III.     Sovereign Acts Doctrine

Finally, the government argues it is entitled to summary judgment because its COVID requirements are sovereign acts. So, as promised, we elaborate more about the sovereign acts doctrine. When the government contracts it is usually subject to the same rules as anyone else. But as a sovereign, "it stands apart." *Stockton E. Water Dist. v. United States*, 583 F.3d 1344, 1366 (Fed. Cir. 2009). When sued as a contractor, the government cannot be held liable for obstructions to performance resulting from its public and general acts as a sovereign. *Casitas Mun. Water Dist. v. United States*, 543 F.3d 1276, 1287 (Fed. Cir. 2008).[3] The separate characters of sovereign and contractor cannot be fused. *Id.* Invocation of the sovereign acts doctrine is a government affirmative defense. *Connor Bros. Constr. Co. v. Geren*, 550 F.3d 1368, 1371 (Fed. Cir. 2008). "The defense does not shield the government from liability for an act 'designed to relieve the Government of its contract duties,' but does for 'a genuinely public and general act that only incidentally' affects the contract." *Am. Gen. Trading & Contracting, WLL*, ASBCA No. 56758, 12-1 BCA ¶ 34,905 at 171,636 (quoting *Stockton*, 583 F.3d at 1366). The government's obstruction of a contract is more likely to be regarded as incidental when its scope is sufficiently broad to affect parties having no connection to the government. *Connor Bros.*, 550 F.3d at 1375. However, an act

---

[3] A second element necessary for the government to avoid liability is that the sovereign act render performance impossible. *See Casitas*, 543 F.3d at 1287. We need not address that factor in this decision.

affecting one contractor can be a sovereign act so long as the effect on contract rights is incidental to a broader governmental objective. *Id.* at 1376.

The government contends that the COVID requirements imposed upon HECO were sovereign acts and so it cannot recover. As noted previously, HECO denies that its claim is premised upon imposition of the COVID requirements themselves, basing it instead upon the government delaying its performance into the period they were imposed. As we understand HECO's theory, the government's lack of contractual responsibility for the COVID requirements is no more relevant than the fact the government is not contractually responsible for seasonably adverse weather after the government delays performance into it. There can still be government liability for the delay. Notably, the government does not contend that its delays here were generated by sovereign acts. We need not decide if we agree with HECO's argument now, because even if we do not, the government has not made a sufficient showing that the COVID requirements stem from a sovereign act.

The government can only receive summary judgment if it demonstrates the absence of any genuine dispute of material fact and it is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a). The government must support an assertion that a fact cannot be genuinely disputed by "citing to particular parts of materials in the record . . . ." FED. R. CIV. P. 56(c)(1)(A); *see also* Board Rule 7(c)(2) (requiring a party to "support by specific evidence all facts and legal arguments necessary to sustain a party's position" by citing to the record or additional attached evidence). The only evidence offered by the government about the character of the COVID requirements is its origin email from the Crane Mechanical Engineer containing them (SOF ¶ 3). The government fails to provide anything to establish that the requirements constituted genuinely public and general acts of the government or were imposed for a broader governmental objective. We have no indication that the requirements were imposed upon anyone other than HECO, or if they were only for HECO how and why they served a broader governmental objective instead of simply increasing its costs. Given that the requirements are not inconsistent with others generally imposed during COVID, it might be reasonable to infer they serve sovereign objectives. But, as the summary judgment movant, the government is not entitled to any inferences in its favor. *See Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994).

Furthermore, the government has also failed to offer any evidence of the authority of the Crane Mechanical Engineer to dictate the requirements. We have no basis to conclude this individual is clothed with the kind of executive power and authority to impose genuinely public and general requirements for the government of a sovereign character. *Compare Nero and Assocs.,* ASBCA No. 30369, 86-1 BCA ¶ 18,579 at 93,296 (denying summary judgment because the government failed to demonstrate official purporting to perform the sovereign act exercised powers within the parameters of the authority granted to him), *with APTIM Fed. Servs., LLC*, ASBCA No. 62982, 22-1 BCA

6

¶ 38,127 at 185,219 (recognizing the authority of a base commander, using his executive authority, to act in a sovereign capacity to close the base to mitigate the outbreak of COVID). As it stands the record is inadequate to rule the imposition of the COVID requirements was a sovereign act.

<u>CONCLUSION</u>

The government's motion for summary judgment is denied.

Dated: September 4, 2025

MARK A. MELNICK
Administrative Judge
Armed Services Board
of Contract Appeals

I <u>concur</u>

OWEN C. WILSON
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63217, Appeal of HECO Pacific Manufacturing, Inc., rendered in conformance with the Board's Charter.

Dated: September 4, 2025

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals