ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| Yul Lim Construction Co., Ltd. | ) ASBCA No. 63483 |
| | ) |
| Under Contract No. W912UM-19-C-0002 | ) |

APPEARANCE FOR THE APPELLANT:      Yong Eui Song, Esq.
                                                                      Central IP & Law
                                                                      Seoul, Korea

APPEARANCES FOR THE GOVERNMENT:      Michael P. Goodman, Esq.
                                                                        Engineer Chief Trial Attorney
                                                                      SoCheung Lee, Esq.
                                                                        Engineer Trial Attorney
                                                                        U.S. Army Engineer District, Far East
                                                                        Seoul, Korea

OPINION BY ADMINISTRATIVE JUDGE THRASHER
ON THE GOVERNMENT'S MOTION TO DISMISS

This claim arises from a dispute regarding repair work at two buildings at Daegu Air Base in Korea. The parties had elected to have the appeal heard on the written record pursuant to Board Rule 11. After the briefing on the merits was completed, the government filed a motion to dismiss for lack of jurisdiction based on the bilateral execution of a settlement agreement. Appellant contends that the settlement agreement was only a partial settlement and that it did not cover all items raised in its previously-filed claim. The Board notified the parties that it would consider the motion to dismiss as a motion for summary judgment because there is evidence referred to outside of the pleadings. For the reasons stated below, we grant the government's motion and deny the appeal.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. The United States Army Corps of Engineers (government or USACE) awarded contract W912UM-19-C-0002 to Yul Lim Construction Co., Ltd. (Yul Lim or appellant) for the repair of two buildings at Daegu Air Base, Korea (R4, tab 2 at 4-6). The contract was awarded on December 31, 2018 (*id.* at 6).

2.  On September 6, 2022, Yul Lim submitted a certified claim for a 740-day extension and ₩11,725,043,090 (approximately $1,454,628)[1] plus interest (R4, tab 9 at 2).  The claim was based on seven major delay factors:  (1) late site release, (2) roof reinforcement on B3605, (3) DOAS and WAF design changes on B3571, (4) domestic water supply, (5) paint spray booth design change on B3571, (6) COVID-19 delays, and (7) severe weather conditions (*id.* at 11-12).

3.  On December 19, 2022, Yul Lim appealed the deemed denial of its claim to the Board, which was docketed as ASBCA No. 63483.

4.  On March 24, 2023, the contracting officer issued a final decision (COFD) determining that the project was delayed 700 days, granting a 661-day extension, with 127 compensable days (R4, tab 1 at 36-37).  The COFD stated that "[t]he [g]overnment intends to issue a unilateral modification effecting the days and amount owed to Yul Lim" (*id.* at 23).  However, the COFD did not include a specific monetary amount owed to Yul Lim (*see id.*).

5.  On January 18, 2024, the parties filed a Joint Stipulation to Partially Dismiss, with prejudice, four of the six delay issues[2] raised by Yul Lim (stip. to partially dismiss dtd. January 18, 2024).  In the Joint Stipulation, the parties stated that they had resolved the issues pertaining to "four of the six major delay periods through the [COFD] . . . in which the Government provided a time extension and compensable delay damages" (*id.* at 2).  However, the joint stipulation did not include a specific monetary amount owed to Yul Lim (*see id.*).  The Board granted this request, leaving only the issues of two delay events and direct costs (Bd. Order dtd. January 25, 2024).

6.  The two remaining delay issues were 1) the late site release and 2) roof reinforcement on building B3605.  On the late site release, the contracting officer had denied Yul Lim's claim for a 42-day delay (R4, tab 1 at 35).  On the roof reinforcement, Yul Lin sought 322 days of delay.  The contracting officer found that there were 347 days of delay, of which the government was responsible for 315.  However, he also found that Yul Lim was responsible for 288 days of concurrent delay, leaving a net of 27 compensable days.  (*Id.* at 35-36)

7.  The January 18, 2024, Joint Stipulation to Partially Dismiss framed the unresolved issue with respect to the roof reinforcement delay as "whether Yul Lim's

---

[1] The contract uses an exchange rate of Korean Won ₩1,128.1127/$1.00 (R4, tab 2 at 5).

[2] Yul Lim did not seek compensation for the domestic water supply delay as it overlapped the delay pertaining to the DOAS and WAF design change on B3571 (R4, tab 9 at 12).

delay on B3571 was concurrent with the Government's delay of its roof repair on B3605 (jt. stip. at 2).

8. On January 26, 2024 (the same day as the Board's order granting the partial dismissal), the parties filed opening briefs pursuant to Board Rule 11. On February 15, 2024, the parties filed Rule 11 response briefs.

9. Neither party has filed any communications or other extrinsic evidence dated between January 26 and March 5, 2024, that shed light on the parties' efforts to resolve their dispute.

10. On March 5, 2024, the parties bilaterally executed Modification No. P00002 (Mod. 2) for "settlement of contractor's claim dated 6 September 2022 and based on the Contracting Officer's final determination dated, 24 March 2023" (R4, tab 63 at 1, 4). The Scope of Work in Mod. 2 further specified that:

> [i]t also includes all fees and time for the following works as equitable adjustments:
>
> 1. Building 3571
>
> a. Architectural Work
>
> (1) Removal of existing metal lath/insulation on above ceiling in around arms room area, RFI-0019.
>
> (2) Install hardware in the existing door (Approved by the user, 607th)
>
> b. Mechanical Work
>
> (1) Change capacity for DOAS system
>
> c. Electrical Work
>
> (1) LED display for fire alarm system, RFI0035
>
> (2) Added control part material per QAB comments
>
> 2. Building 3605
>
> a. Architectural Work

(1) Change materials from capillary water barrier (CWB) to NFSM or light weight concrete, RFI-0011.

b. Mechanical Work

(1) Revise equipment type (HV-1 & HV-2)

(2) No water supplies

c. Electrical Work

(1) Change Paint Spray Booth to explosionproof type, RFI-0064

(2) Roll-Up Door Power Connection, RFI-0060

(3) Add offshore/local material per QAB comments

(*Id.* at 4)

11. With respect to delay, Mod. 2 granted 661 days of government delay, of which 534 were concurrent to delays by Yul Lim (and, thus, non-compensable), leaving 127 days of compensable delay, which is what the contracting officer had granted in the final decision (*compare* R4, at 1 at 36, tab 63 at 6). The modification specifically listed each component of the 661 days granted, including 315 days for the roof reinforcement delay (R4, tab 63 at 6).

12. Mod. 2 provided Yul Lim with ₩283,851,949 as a settlement amount and ₩19,560,511 as interest (*id.*). The modification also contained the following release language:

> It is further understood and agreed by all parties that this adjustment constitutes compensation in full on behalf of the contractor . . . for all cost and markups attributable to the circumstances giving rise to this modification for all delays related thereto, and for the performance of the change within the time frame stated.

(*Id.* at 6) In fulfillment of Mod. 2, USACE paid Yul Lim a total of ₩303,412,460 on June 6, 2024 (R4, tab 64).

13. On July 1, 2024, the President of Yul Lim signed a statement, admitting that "[w]hen one of my employees brought me [Mod. 2] for my signature, I signed it

4

after asking him whether the amount was correctly stated without actually reviewing [Mod. 2] because of my busy schedule" (app. resp. at enc. K).  There are no documents in the record to indicate Yul Lim involuntarily signed Mod. 2 or had any objections to the signing of Mod. 2.

14.  While the Rule 11 merits briefs were still pending before the Board, on June 17, 2024, the government filed a motion to dismiss for lack of jurisdiction, citing what it contended was a full settlement of the dispute in Mod. 2.

## DECISION

### I.	Standard of Review

The government moves to dismiss this appeal for lack of jurisdiction based on the bilateral execution of a settlement agreement.  The government argues the execution of Mod. 2, the settlement agreement, moots the appeal "leaving nothing else to adjudicate."  (Gov't mot. at 1)  The Board notified the parties that it considered the motion to dismiss as a motion for summary judgment due to evidence referred to outside of the pleadings and allowed them to submit further briefing for consideration (Bd. Order dtd. November 5, 2024).  Yul Lim asserts that Mod. 2 was a partial settlement, addressing only four of its six delay claims, and that the government's motion for summary judgment should be denied (app. resp. ¶¶ 28-31, 33-39).  Yul Lim makes various additional arguments that incorporate aspects of duress, mistake, and misrepresentation; however, as discussed below, Yul Lim fails to provide sufficient factual evidence to prove its case.

In deciding summary judgment motions, the Board looks to Rule 56 of the Federal Rules of Civil Procedure for guidance.  Board Rule 7(c)(2); *Fluor Intercontinental, Inc.*, ASBCA Nos. 62550, 62672, 22-1 BCA ¶ 38,105 at 185,099.  Summary judgment is properly granted only where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  The moving party bears the burden of establishing the absence of any genuine issue of material fact and all significant doubt over factual issues must be resolved in favor of the party opposing summary judgment.  *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987); FED. R. CIV. P. 56.  A material fact is one that may affect the outcome of the decision.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  Once the moving party has met its burden of establishing the absence of disputed material facts, then the opposing party must set forth specific facts, not conclusory statements or bare assertions, to defeat the motion.  *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626-27 (Fed. Cir. 1984).  A genuine issue of material fact arises when the nonmovant presents sufficient evidence upon which a reasonable fact finder, drawing the requisite inferences and applying the applicable evidentiary standard, could decide the issue in favor of the nonmovant.  *Odyssey Int'l,*

5

*Inc.*, ASBCA Nos. 62062, 62279, 21-1 BCA ¶ 37,902 at 184,070 (quoting *C. Sanchez and Son, Inc. v. United States*, 6 F.3d 1539, 1541 (Fed. Cir. 1993)). The non-movant must oppose the motion with citations to record evidence; allegations that something happened are insufficient. *Id.* at 184,071. Here, there is no dispute that the parties signed a bilateral modification with a description of "settlement of contractor's claim dated 6 September 2022," thus the burden is on Yul Lim to overcome the motion for summary judgment (SOF ¶ 10).

II.     Settlement Agreement/Release

The government contends that bilateral settlement Mod. 2 "explicitly encompassed the entire claim underlying this appeal" and contained a release of claims without any reservation of rights or exclusions (gov't mot. at 3-4). A release is contractual in nature and must be interpreted in the same manner as any other contract term or provision. *Bell BCI Co. v. United States*, 570 F.3d 1337, 1341 (Fed. Cir. 2009) (citing *Metric Constructors, Inc. v. United States*, 314 F.3d 578, 579 (Fed. Cir. 2002)). In interpreting a release, we first examine whether the modification is ambiguous, whether the terms are susceptible to more than one reasonable interpretation. *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1434-35 (Fed. Cir. 1996). If the terms are unambiguous, then they must be given their plain and ordinary meaning; we cannot consider extrinsic evidence for interpretation. *Id.* at 1435. If the modification is ambiguous, requiring the weighing of extrinsic evidence, the matter generally is not amenable to summary resolution. *Odyssey*, 21-1 BCA ¶ 37,902 at 184,072. In some cases where a release has been found to be ambiguous, the release included qualifying language such as "partial payment," "to the extent of payments actually received," or some other general reservation of rights. *See Metric Constructors*, 314 F.3d 578 at 583; *Whiting-Turner Contracting Co.*, ASBCA No. 56319, 10-1 BCA ¶ 34,436 at 169,952.

In the present case, Yul Lim asserts that Mod. 2 is a partial release, covering only the amount Yul Lim was expecting from the Joint Stipulation agreement,[3] not the entire claim (app. resp. ¶¶ 27-38). The problem for Yul Lim is that Mod. 2 clearly addresses the entire 700-day delay claim. As we have described, the modification provided that the government was responsible for 661 days of delay, of which 534 days were concurrent with Yul Lim delays, leaving a net of 127 compensable days. The modification specifically identified 315 days of delay for the roof reinforcement. (SOF ¶ 11) While the modification did not specifically address the

---

[3] Yul Lim argues that the issues resolved in the joint stipulation agreement amounted to ₩283,851,949 and that Mod. 2 was in satisfaction of that agreement (app. resp. ¶¶ 15-18). However, neither the joint stipulation agreement nor the COFD referenced therein state a specific amount due to Yul Lim (SOF ¶¶ 4-5).

much smaller site release delay, this issue was subsumed within the 700 days of total delay.

We hold that the language of Mod. 2 is unambiguous. As the Supreme Court stated in *United States v. William Cramp & Sons Ship & Engine Bldg. Co.*, "[i]f parties intend to leave some things open and unsettled, their intent so to do should be made manifest." 206 U.S. 118, 128 (1907). Accordingly, if Yul Lim had intended to reserve some issue, it should have specifically noted the reserved issues, rather than signing a modification that resolved all 700 days of delay and specifically referenced the roof reinforcement issue. Further, the government's payment of ₩303,412,460 in Mod. 2 constitutes adequate consideration for Yul Lim's release. *See* RESTATEMENT (SECOND) OF CONTRACTS § 79 cmt. c (1981); *see also Aviation Contractor Employees, Inc. v. United States*, 945 F.2d 1568, 1573-74 (Fed. Cir. 1991). In the absence of an ambiguity, we decline to examine the parties' extrinsic evidence.[4] *Bell BCI Co.*, 570 F.3d at 1342.

Yul Lim, nevertheless contends that the phrase "[t]his is for the settlement of contractor's claim dated 6 September 2022" refers to what appellant calls the "Government Acknowledged Amount,"[5] rather than all claims raised in the September 6, 2022 claim (SOF ¶ 10; app. resp. ¶ 55). Likewise, Yul Lim states the "sentence reading 'this adjustment constitutes [compensation] in full on behalf of the contractor' should be interpreted as the adjustment of paying the Government Acknowledged Amount in full" (SOF ¶ 6; app. resp. ¶ 57). To validate these interpretations, Yul Lim posits that an excerpt from the Mod. 2 Closing Statement, which reads "attributed to the circumstances giving rise to the modification," refers to the January 18, 2024, Joint Stipulation Agreement (SOF ¶¶ 10-12; app. resp. ¶ 59). Yul Lim further argues that there is additional ambiguity in the language of Mod. 2; that it "contained many calculations, figures, and line items that are difficult for a reasonable person to decipher," and that the release of claims was "tucked away on several pages and was not very noticeable" (app. resp. ¶¶ 66-71).

Notwithstanding Yul Lim's perspective, in looking at Mod. 2 itself, there is no mention of the Joint Stipulation to partially dismiss, there is no qualifying language or reservation of rights, the release language is not hidden or complex—the document is only six pages, nor do any of the terms appear to be ambiguous. Mod. 2 clearly states

---

[4] Appellant raises ancillary issues regarding the government's payment of retained funds, to which we decline to consider in this appeal given the unambiguous nature of the release (app. resp. ¶¶ 82-84; gov't reply at 6-7).

[5] Appellant appears to derive the "Government Acknowledged Amount" based on inadmissible settlement negotiations. FED. R. EVIDENCE 408(a); Board Rule 10(c) ("parties may offer such evidence . . . as would be admissible under the Federal Rules of Evidence"); (app. sur-reply ¶¶ 21-28).

in its Description that it is for the "settlement of contractor's claim dated 6 September 2022;" the Summary of Changes line items list "Claim Settlement," "Claim Settlement_Funding," and "Claim Settlement_Additional Funding;" the Scope of Work section states that it "includes all fees and time for the following work" then proceeds to detail the work covered by the settlement; and the Closing Statement has specific release language stating that "this adjustment constitutes compensation in full . . . for all cost and markups attributable to the circumstances giving rise to this modification." (R4, tab 63; SOF ¶¶ 10-12) Given the breadth and detail of Mod. 2, there is no "evidence that would lead us to conclude that the parties had any unarticulated intention to reserve any rights." *Leonhard Weiss GmbH & Co. and Huebsch Industrieanlagen Spezialbau GmbH, Joint Venture*, ASBCA No. 37574, 93-1 BCA ¶ 25,443 at 126,707.

III.    Special Circumstances

Generally, the execution by a contractor of a release which is complete on its face reflects the contractor's unqualified acceptance and agreement with its terms and is binding on both parties. *C & H Com. Contractors, Inc. v. United States*, 35 Fed. Cl. 246, 252 (1996). However, the Board has held that there are "special and limited situations in which a claim may be prosecuted despite the execution of a general release." *Odyssey*, 21-1 BCA ¶ 37,902 at 184,072 (quoting *Bender Shipbuilding Repair Co.*, ASBCA No. 41459, 91-3 BCA ¶ 24,230 at 121,186). These include situations involving fraud, duress, unilateral or mutual mistake, and the parties' continued consideration of a claim that indicates it was not abandoned by the release. *See Satterfield & Pontikes Constr., Inc.*, ASBCA Nos. 59980, 62301, 21-1 BCA ¶ 37,873 at 183,911; *Axion Corp.*, 68 Fed. Cl. 468, 475-76 (2005). *See also C & H Com. Contractors, Inc.*, 35 Fed. Cl. 246, 251 (the government's misrepresentations rendered the releases void as to certain claims). Here, Yul Lim makes several arguments that Mod. 2 should be void, to include duress, mistake, and misrepresentation.

To render a contract unenforceable for duress, the party must establish that (1) the contractor involuntarily accepted the government's terms, (2) circumstances permitted no other alternative, and (3) the government's coercive acts caused the contractor to involuntarily accept the government's terms and offered no alternative. *Frazier Investments, Inc., d/b/a/ Optimum Constr.*, ASBCA No. 63001, 23-1 BCA ¶ 38,313 at 186,045 (citing *Rumsfeld v. Freedom NY, Inc.*, 329 F.3d 1320, 1329-30 (Fed. Cir. 2003)). To show "coerciveness" in this situation, there must be a wrongful action by the government that was (1) illegal, (2) a breach of an express provision of the contract without a good-faith belief that the action was permissible under the contract, or (3) a breach of the implied covenant of good faith and fair dealing. *Id.* at 186,045-46.

8

Yul Lim asserts that the government "pressured [Yul Lim] to settle by requiring the signing of the Amendment, withholding prompt payment, and requiring the submission of irrelevant documents"[6] (app. resp. ¶¶ 44-47, 54).  However, Yul Lim does not cite any evidence in the record to support this assertion.  To the contrary, the documents that Yul Lim refers to are all dated after the execution of Mod 2; therefore, it is illogical that those documents, or what is contained in them, pressured Yul Lim to sign the agreement.

Likewise, regarding the assertion that USACE was withholding payment, Yul Lim does not point to any evidence where USACE stated it would not pay Yul Lim if it did not sign Mod. 2.  Rather, Yul Lim alleges that the "government told the appellant that unless the appellant provided documents, which included [Mod. 2] . . . the government would not pay" (app. sur-reply ¶ 45) and hypothesizes that had it "noticed the language in [Mod. 2] . . . and [if it] required the government to delete it, it is highly unlikely the government would have acquiesced and paid" (app. resp. ¶ 85).

Yul Lim further argues that per FAR 33.211(h), the government should have paid the "Acknowledged Amount" from the COFD, but withheld payment until Mod. 2 was signed (app. resp. ¶¶ 61-65; app. supp. br. dated Dec. 6, 2024 ¶¶ 19-33, 50).  FAR 33.211(h) provides that the "amount determined payable under the [COFD] . . . should be paid . . . without awaiting contractor action concerning appeal.  Such payment shall be without prejudice to the rights of either party."  However, FAR 33.211(h) is inapplicable in the current situation.  It is well settled that once a contractor files an appeal, the contracting officer's determination of partial entitlement is not binding on the parties; the Board's proceedings are de novo. *Wilner v. United States*, 24 F.3d 1397, 1401 (Fed. Cir. 1994); *Cf. Hoboken Shipyards Inc.*, ASBCA No. 38012, 90-3 BCA ¶ 23,150 at 116,206.  Payment was made in fulfillment of Mod. 2 on June 6, 2024, three months after the modification was executed (SOF ¶ 6).

Yul Lim also contends that the government "failed to act in good faith" and is "guilty of unclean hands" (app. resp. ¶¶ 14-50).  Appellant appears to take issue with the submission of "several revised proposals for equitable adjustment" (*id.* ¶ 17); makes an unsubstantiated allegation that in response to a June 28, 2023, letter requesting the "Acknowledged Amount," the government "replied that it would pay as soon as funding became available" (*id.* ¶ 20); and reiterates the same baseless arguments regarding ambiguous language in Mod. 2 (*id.* ¶ 29) and the withholding of

---

[6] Yul Lim cites the following:  KRW EFT ENROLLMENT FORM dated March 28, 2024; Status of Payment to Sub-Contractors dated May 16, 2024; Contractor Pay Request Worksheet-Invoice dated May 5, 2024; letter requesting the 25th progress payment with a Network Analysis System dated May 16, 2024; and prompt payment certifications dated May 5, 2024, and June 13, 2024 (app. resp. ¶¶ 19-24).

prompt payment discussed above (*id.* ¶¶ 18, 21-23, 28, 32). Every contract imposes upon each party a duty of good faith and fair dealing. *Metcalf Constr. Co. v. United States*, 742 F.3d 984, 990 (Fed. Cir. 2014). The implicit duty prevents a contracting party from interfering with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract. *Id.* at 991. Here, Yul Lim has not identified or provided any evidence to uphold its contention that the government violated the duty of good faith.

Yul Lim has failed to demonstrate that the government committed any wrongful actions that were either (1) illegal, (2) a breach of an express provision of the contract or (3) a breach of the implied covenant of good faith and fair dealing. Accordingly, we hold there were no coercive acts that caused Yul Lim to accept the government's terms; thus, there was no duress.

Yul Lim also argues that Mod. 2 should be void based on mistake and misrepresentation. A "release may be voided if a party's manifestation of assent was induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient was justified in relying." *Odyssey*, 21-1 BCA ¶ 37,902 at 184,073 (internal citations omitted). The proper interpretation of a written agreement is an issue of law and the parties to a contract generally are charged with knowledge of the law affecting their business dealings. *T.L. Roof & Assocs. Constr. Co. v. U.S.*, 28 Fed. Cl. 572, 577 (1993). Consequently, courts have expressed reluctance to reform a contract on the basis of mistake or misrepresentation involving issues of law unless unusual circumstances are present. *Axion*, 68 Fed. Cl. 468, 478 (2005) (internal citations omitted).

Appellant asserts that "the government forced, tricked, and entrapped the appellant to sign" Mod. 2 and states that it "repeatedly objected to the signing of" Mod. 2 (app. sur-reply ¶¶ 45-53). Yet again, Yul Lim fails to point to any evidence to support its assertions. There are no emails, letters, or sworn statements in the record to demonstrate Yul Lim objected to signing the modification or how it was forced, tricked, or entrapped. In fact, appellant admits in its own arguments that its president signed Mod. 2 without a review. (SOF ¶ 7; app. resp. ¶¶ 66-71) Due to his busy schedule, Yul Lim's president orally verified with one of his employees the accuracy of the amount only, did not review the document, and signed Mod. 2 (SOF ¶ 7). In light of the above, Yul Lim has not established that the government made an erroneous representation of material fact that Yul Lim honestly and reasonably relied on to its detriment. *See Colo. River Materials, Inc. d/b/a NAC Constr.*, ASBCA No. 57751 13-1 BCA ¶ 35,233 at 172,991-92.

CONCLUSION

Accordingly, there are no genuine issues of material fact, nor any unusual circumstances that would merit reformation or recission of the settlement agreement. We hold that the government has established that it is entitled to summary judgment in its favor. The appeal is denied.

Dated: July 15, 2025

JOHN J. THRASHER
Administrative Judge
Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I concur

MICHAEL N. O'CONNELL
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63483, Appeal of Yul Lim Construction Co., Ltd., rendered in conformance with the Board's Charter.

Dated: July 16, 2025

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

11